STATE OF NORTH CAROLINA v. TYRONE EUGENE ALLEN

No. 49

(Filed 2 December 1980)

### 1. Criminal Law § 66.8; Constitutional Law § 29— photographs of defendant while in jail — legal arrest — no constitutional violation

A photograph of defendant taken while he was in jail in Virginia was not obtained in violation of his constitutional rights where the officer who arrested defendant in Virginia had probable cause to stop the car in which defendant was riding and arrest him without a warrant for the robbery of a grocery store, and the trial court properly admitted in evidence the photograph and testimony concerning the photograph.

### 2. Criminal Law §§ 66, 117.3— instructions — difficulty in identifying person of different race

The trial court did not err in refusing to give instructions requested by defendant to the effect that the identifying witnesses were of a different race than defendant, that in the experience of many it is more difficult to identify members of a different race than members of one's own, that the jury could consider such experience in evaluating the testimony of the identification witnesses, and that the jury must also consider whether there were other factors present which overcame any difficulty of identification, particularly where there was no indication that race in any way affected the identification of defendant by the witnesses in this case.

### 3. Constititional Law § 30— quashal of subpoena

The trial court in an armed robbery case did not err in allowing the State's motion to quash his subpoena for "all the sawed-off shotguns confiscated by the Greensboro Police Department" since the date of the robbery.

### 4. Criminal Law § 92.1— consolidation of charges against two defendants

The trial court did not err in allowing the State's motion to consolidate for trial charges against defendant and a codefendant for the same armed robbery. G.S. 15A-926 to -927.

### 5. Criminal Law § 42.4— identification of shotgun

The trial court properly admitted a sawed-off shotgun in an armed robbery case where one witness positively identified the gun as the one used in the robbery and another witness testified that it looked like the weapon used.

**6. Criminal Law § 66.16— in-court identifications — no taint from photographic identification**

The trial court properly determined that in-court identifications of defendant were not tainted by a pretrial photographic procedure where the court found upon supporting *voir dire* evidence that the witnesses had ample opportunity to observe defendant during the course of the robbery in question; the in-court identifications of defendant were of independent origin based solely on what the witnesses saw at the time of the robbery and did not result from any out-of-court confrontation, photograph, or pretrial identification procedure; and the pretrial photographic procedures were not so unnecessarily suggestive as to lead to irreparable mistaken identification.

**7. Criminal Law § 114.2— instructions — corroborating evidence "tending to show" — no expression of opinion**

The trial court did not express an opinion on the evidence in instructing the jury that evidence had been received as corroboration "tending to show" that certain State's witnesses had made statements to officers which were consistent with their testimony at trial.

Justice BROCK did not participate in the consideration or decision of this case.

APPEAL by defendant from *Wood, J.*, 14 January 1980 Session, GUILFORD Superior Court.

Upon a plea of not guilty, defendant was tried on a bill of indictment, proper in form, charging him with the armed robbery of two named employees of a Western Sizzlin Restaurant in the City of Greensboro. He and a codefendant were tried together. Evidence presented by the state is summarized in pertinent part as follows:

At approximately 3:30—4:00 p.m. on 20 May 1979, four employees—Lacy Goodwin, Elizabeth Flynt, Kelley Sealey and Linlia Williams—and one visitor—Leslie Britt—were talking while seated in the dining area of the Western Sizzlin Restaurant on West Market Street in Greensboro. There were no customers in the restaurant at that time.

A white car drove into the parking lot and two black men got out and entered the restaurant. One of the men was quite large; the other one was short in stature and appeared to be older. The men asked if there was a Western Sizzlin on Battleground Avenue. When told that there was, they left but returned in less than a minute later and asked for job applications. Some of the employees referred the men to Mr. Goodwin, the assistant manager, who had left the table and was in the kitchen area. Mr. Goodwin came back out and the two men talked with him about jobs. He gave them application forms. Thereupon, the short man pulled out a sawed-off

State v. Allen

shotgun and said, "Back-up". The two men stepped over a railing and the large man pulled out a pistol.

All five persons who were in the restaurant when the two men entered were ordered to get down on the floor. Ms. Williams was then ordered to open the cash register. As she went to the register, the smaller man said, "We're not going to hurt you, but if he moves, you're dead." She opened the register and was pushed against the wall. The shorter man took the cash drawer out himself and then told Mr. Goodwin to open the safe. When Mr. Goodwin did not move, the shorter man stuck the shotgun in Ms. Williams' left side. Goodwin got up and went to the safe. While opening the safe, the shorter man held the shotgun in Goodwin's side and the larger man was standing behind him with a pistol to Goodwin's head. The two men took a little more than $1,000.00.

The robbers then discussed whether to put the five victims in the freezer or the storeroom. Eventually they ordered them into the storeroom and made additional threats. The victims were told to remain in the storeroom for "half an hour or we'll blow your head off". They waited in the storeroom for approximately thirty minutes until Manager Gordan Durham opened the door. Police were called and the victims described the two robbers in considerable detail.

Defendant and his codefendant, James Carroll, also known as James Holland, were arrested in Petersburg, Virginia, on 28 June 1979 for an alleged armed robbery of an IGA store there. Upon their arrest a sawed-off shotgun was taken. (Defendant Allen was found not guilty of that robbery while his codefendant pleaded guilty.) Witness Flynt testified that the shotgun was similar to the one used in the robbery in question while witness Goodwin testified positively that it was the one used in the robbery. The gun was admitted into evidence.

All of the witnesses identified codefendant Carroll as the older robber. However, defendant Allen was identified in court only by witnesses Flynt and Britt. Both witnesses based identification on events at the time of the robbery. Petersburg Police Officer Carmichael testified that since the time he saw defendant in Petersburg on 28 June 1979, defendant had lost 70-80 pounds. Witnesses Williams and Britt agreed that defendant had lost considerable weight.

Other evidence presented by the state and necessary for an understanding of the questions presented on appeal will be referred to in the opinion.

Neither of defendants presented evidence.

The jury returned a verdict finding defendant Allen guilty of armed robbery and from judgment imposing a life sentence, he appealed.[1]

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Richard L. Griffin, for the state.*

*Assistant Public Defender A. Wayland Cooke for defendant-appellant.*

BRITT, Justice.

**[1]** By his first assignment of error argued in his brief, defendant contends the trial court erred in admitting into evidence a photograph of him taken while he was in jail. He argues that the photograph was obtained in violation of his constitutional rights. This assignment has no merit.

While the record is unclear as to just what defendant is complaining about in this assignment, it appears to relate to state's Exhibit 2, a photograph of defendant taken while he was in jail in Petersburg, Virginia, on 2 July 1979. Witness Lacy Goodwin, one of the victims of the robbery, was shown Exhibit 2 and then testified:

> I've picked out the picture that fairly and accurately represents the man that was in there on May the 20th. State's Exhibit No. 2 fairly and accurately represents this individual. There is no doubt in my mind that the individual that robbed me fairly and accurately is represented in this picture.

The state then introduced the photograph for purpose of illustrating the testimony of the witness and the court instructed the jury that they could consider the photograph for that purpose alone.

Witness Goodwin was followed on the witness stand by Sergeant Robert Carmichael of the Petersburg, Virginia Police Department. He testified that on 28 June 1979, following a reported armed robbery, he stopped a 1973 Cadillac being driven in the City of Petersburg by defendant; that codefendant Carroll and a woman

---

[1]Codefendant Carroll was also found guilty of armed robbery and he was sentenced to life imprisonment.

State v. Allen

were also in the front seat; and that he found a sawed-off shotgun on the floor of the car under Carroll's legs some two or three feet from defendant. Sergeant Carmichael then identified Exhibit 2 as a picture of defendant "as he looked when I saw him". The witness then stated that in his opinion defendant had lost approximately 70 to 80 pounds between the time he first saw defendant in Petersburg and the date of the trial.

Greensboro Police Officer W. E. McNair followed Sergeant Carmichael on the witness stand. After giving other testimony, he stated, over objection, that Mr. Goodwin selected the photograph identified as Exhibit 2 from a group of pictures and said "that's the man"; also, "that's the man—the big man in the robbery".

Defendant argues that Exhibit 2 was obtained in violation of his constitutional rights and that the trial court erred in allowing it to be admitted into evidence. In support of his argument, defendant cites us to our decision in *State v. Accor and Moore*, 277 N.C. 65, 175 S.E. 2d 583 (1970), in which we held that photographs which were taken of defendants in jail after they have been picked up without probable cause are inadmissible.

*State v. Accor and Moore, supra,* is distinguishable from the present case. In the case *sub judice,* the trial judge conducted a voir dire on defendant's motion to suppress identification testimony. At that hearing, Sergeant Carmichael gave testimony which tended to show that he had probable cause to stop the car in which defendant was riding and arrest defendant in connection with the robbery of a grocery store. At the time the officer had been dispatched to the scene of the armed robbery, he had been given a description of a suspect: a black male who was wearing a light colored suit with a blue shirt. Upon his arrival at the scene, Sergeant Carmichael was told that the suspect had jumped into a nearby automobile. Witnesses at the store pointed out a passing silver colored 1973 Cadillac on an adjacent street. The officer and a police lieutenant left the store and stopped the Cadillac a short distance away. At the time the car was stopped, defendant was driving the vehicle and was wearing a suit and a blue shirt.

These facts were sufficient to establish probable cause to justify the arrest of defendant pursuant to Section 19.2-81 of the Code of Virginia which authorizes a law enforcement officer to "arrest, without a warrant, ... any person whom he has reasonable grounds or probable cause to suspect of having committed a felony not in his

presence; . . . ."

We hold the trial court did not commit error in admitting testimony relating to the photograph because the rule of *State v. Accor and Moore, supra*, simply does not apply to the situation of the present case where there was probable cause. Furthermore, any error was rendered harmless by the admission of the following testimony by Mr. McNair without objection:

> In the set of photographs in reference to the larger man, Mr. Goodwin picked out the picture of Mr. Allen and he stated that he was the larger suspect in the robbery. He did not make any misidentification as to the larger suspect. He did not pick anybody else out.

"When evidence is admitted over objection but the same evidence has theretofore or thereafter been admitted without objection, the benefit of the objection is ordinarily lost." 4 Strong's N.C. Index 3d, Criminal Law § 162, pp. 825-26.

**[2]** Defendant assigns as error the failure of the trial court to grant his request that the following special instruction be given to the jury:

> In this case the identifying witnesses are of a different race than the defendant. In the experience of many, it is more difficult to identify members of a different race than members of one's own. If this is also your experience, you may consider it in evaluating the witness' testimony. You must also consider, of course, whether there are other factors present in this case which overcome any such difficulty of identification. For example, you may conclude that the witness has had sufficient contacts with members of the defendant's race that he would not have greater difficulty in making a reliable identification.

The only authority defendant cites for this novel assignment is *United States v. Telfaire*, 469 F. 2d 552 (D.C. Cir. 1972). We do not find that case authoritative or persuasive. In *Telfaire*, the defendant was convicted of robbery on the identification of a single witness. The United States Court of Appeals for the District of Columbia Circuit (Bazelon, C.J., and Leventhal and Adams, J.J.) affirmed the conviction. Following the opinion, the court, in an appendix, set forth "Model Special Instructions on Identification". Thereafter, in

a concurring opinion, Bazelon, C.J., discussed the question of inter-racial identifications and concluded that when the issue is raised, an instruction similar to that quoted above should be given. Leventhal, J., in a concurring opinion, discussed the same subject but disagreed with Bazelon, C.J.; he closed his discussion with the following conclusion:

> The more I ponder the problems, the better I understand the kernel of wisdom in the decisions that shy away from instructions on inter-racial identifications as divisive. [Citing *People v. Burris*, 19 A.D. 2d 557-558, 241 N.Y.S. 2d 75, 76 (Second Dept. 1963); *People v. Hearns*, 18 A.D. 2d 922, 923, 238 N.Y.S. 2d 173, 174-175 (Second Dept. 1963)]. 469 F. 2d at 562.

We do not choose to follow the Bazelon opinion. In the case at hand, there is no indication that race in any way affected the identification of defendant by the witnesses. The robbery took place in the daytime, in a well-lighted restaurant, and the witnesses were able to view the robbers at close range for several minutes. The only difficulty in identifying defendant was due to the fact that he had lost considerable weight—70 to 80 pounds—between the time of the robbery and the time of the trial. The assignment of error is overruled.

**[3]** We find no merit in defendant's assignment of error in which he contends that the trial court erred in allowing the state's motion to quash his subpoena for "all the sawed-off shotguns confiscated by the Greensboro Police Department since May, 20, 1979".

Defendant makes the broad assertion that his rights guaranteed by Article 1, Section 23, of the North Carolina Constitution, and the sixth and fourteenth amendments to the United States Constitution were violated by this action of the trial court, but at no place does he state why compliance with the subpoena was necessary to his defense. It is true that as soon as the district attorney made the motion to quash, the trial judge allowed it. However, the court then asked defense counsel if he wanted to be heard "on that" and there was no response. "The burden is on defendant not only to show error but also to show that the error complained of affected the result adversely to him. . . . " 4 Strong's N.C. Index 3d, Criminal Law § 167.

**[4]** There is no merit in defendant's assignment of error that the trial court erred in allowing the state's motion that defendant's case

and defendant Carroll's case be consolidated for trial. This was a matter within the discretion of the trial judge and we perceive no abuse of discretion. G.S. §§ 15A-926 to -927 (1978); *State v. Slade,* 291 N.C. 275, 229 S.E. 2d 921 (1976).

**[5]**   There is no merit in defendant's assignment of error in which he contends that the admission of a sawed-off shotgun into evidence was error. The gun was relevant evidence, and, upon proper identification, was admissible. *State v. King,* 287 N.C. 645, 215 S.E. 2d 540 (1975), *death sentence vacated,* 428 U.S. 903 (1976). One of the witnesses positively identified the gun as the one used in the robbery and another witness testified that it looked like the weapon used. The testimony was admissible. *State v. Simmons,* 286 N.C. 681, 213 S.E. 2d 280 (1975), *death sentence vacated,* 428 U.S. 903 (1976).

**[6]**   By his assignment of error No. 1, defendant contends that the trial court erred in finding that the in-court identifications of defendant were untainted. This assignment has no merit.

Begining on 3 December 1979, prior to the trial of this case at the 14 January 1980 session of the court, the trial judge conducted lengthy voir dire hearings relating to the identification of defendants Allen and Carroll, not only with respect to this case but other robberies as well. At these hearings, the five witnesses to the robbery, together with Greensboro and Petersburg police officers, testified regarding the identification of the defendants. Following the hearings, the court made extensive findings of fact and conclusions of law to the effect that the witnesses had ample opportunity to observe the defendants during the course of the robbery in question; that the in-court identifications of the defendants were of independent origin based solely on what the witnesses saw at the time of the robbery; that the identifications did not result from any out-of-court confrontation, photograph or pretrial identification procedure; and that the pretrial photographic identification procedures were not so unnecessarily suggestive or conducive as to lead to irreparable mistaken identification.

It is well settled in this jurisdiction that when the admissibility of in-court identification testimony is challenged on the ground that it is tainted by an out-of-court identification made under constitutionally impermissible circumstances, the trial judge must make findings as to the background facts to determine whether the proffered testimony meets the tests of admissibility; and when the facts

so found are supported by competent evidence, they are conclusive on the appellate courts. *State v. Woods*, 286 N.C. 612, 213 S.E. 2d 214 (1975), *death sentence vacated*, 428 U.S. 903 (1976); *State v. Tuggle*, 284 N.C. 515, 201 S.E. 2d 884 (1974); 4 Strong's N.C. Index 3d, Criminal Law § 66.20. We hold that the evidence presented at the voir dire hearings was more than sufficient to support the findings of fact made by the trial court, and those findings were sufficient to support the conclusions of law made by the court.

**[7]** Finally, defendant assigns as error the following instruction given by the trial court to the jury:

Evidence has been received as corroboration tending to show that at an earlier time the witness Elizabeth Carol Flynt made statements to Detective McNair and also a statement to Officer Brooks; that the witness Linlia Williams made the statement to Detective McNair and also to Officer Lloyd, that the witness Lacy Goodwin made a statement to Detective McNair and also to Officer Lloyd, that the witness Leslie Britt made a statement to Officer Brooks consistent with their testimony at this trial.

Defendant argues that the quoted instruction is erroneous because the court expressed an opinion on the evidence to the jury. We do not find this argument persuasive. It will be noted that in the early part of the instruciton, the court stated that there was evidence "*tending* to show . . . ." (Emphasis added.) This court has held many times that the use of these words does not constitute the expression of an opinion. *State v. Huggins*, 269 N.C. 752, 153 S.E. 2d 475 (1967); *State v. Jackson*, 228 N.C. 656, 46 S.E. 2d 858 (1948).

A careful review of the record leads us to conlude that defendant received a fair trial, free from prejudicial error.

No error.

Justice BROCK did not participate in the consideration or decision of this case.