STATE OF NORTH CAROLINA v. JAMES MILLER, ALIAS JAMES SMITH AND DANIEL PEARCE ROBERTS

No. 8318SC993

(Filed 3 July 1984)

1. **Criminal Law §§ 66.9, 66.16— identification of defendant—photographic identification—independent origin of identification**

   The trial court did not err in admitting in-court identification testimony of defendant by three witnesses, though some prior photographic lineups were unduly suggestive, since the court conducted an extensive *voir dire* of all three witnesses to determine the basis for their identifications, the photographic lineup shown to one witness was not unduly suggestive, and the in-court identifications of all three witnesses were of independent origin and therefore admissible.

2. **Criminal Law § 98.2— sequestration of witnesses**

   There was no merit to defendants' contentions that three witnesses' in-court identifications of defendants were impermissibly tainted because the witnesses were present when the court asked one defendant to raise his hand to identify himself to the jury, and the trial court therefore did not err in denying defendants' motion to sequester the witnesses.

3. **Criminal Law § 92.1— consolidation of offenses**

   The trial court did not err in granting the State's motions to join for trial both defendants who were charged with armed robbery and assault with a deadly weapon with intent to kill inflicting serious injury since there was a transactional connection between the robbery and the assault; evidence concerning the armed robbery was relevant to the issue of the identity of the perpetrator of the assault; and one defendant's contention that joinder precluded him from testifying about his passive role in the robbery was irrelevant.

4. **Assault and Battery § 15.2 — assault with a deadly weapon with intent to kill inflicting serious injury — instructions proper**

   In a prosecution for assault with a deadly weapon with intent to kill inflicting serious injury where the evidence tended to show that defendants, acting in concert, robbed a victim and then fled in an automobile which they had stolen three days earlier, the vehicle was stopped by an officer, and defendant then shot him in the face, the trial court did not err ·in instructing the jury that, if the shooting of the officer happened during the commission of the armed robbery or during the flight therefrom, and the defendants had acted together in the commission of the robbery, they were both legally accountable for criminal acts occurring during their joint venture.

5. **Criminal Law § 66 — identification of defendant — no instruction on interracial identification**

   The trial court did not err in refusing to give a requested instruction on interracial identification, where there was no indication that race in any way affected the identification of defendants by the witnesses.

6. **Criminal Law § 60.5 — fingerprints instructions proper**

   The trial court did not err in denying defendants' request for a jury instruction concerning the probative force of fingerprint evidence, since there was no evidence from which the jury could infer that prints were left by defendants at a time or under circumstances not directly related to the crimes charged, and defendants did not meet their burden of showing prejudice, that is, that a different result would have been reached at trial.

APPEAL by defendants from *Rousseau, Judge.* Judgments entered 19 January 1983 in Superior Court, GUILFORD County. Heard in the Court of Appeals 7 May 1984.

Each of the defendants was convicted of two charges: armed robbery and assault with a deadly weapon with intent to kill inflicting serious injury. As the State's evidence was extensive, our summary of it will necessarily be selective, with particular attention paid to those parts to which defendants' assignments of error are directed. The State's evidence, then, in pertinent part, tended to show the following: On the evening of 11 July 1982, Marvin Massengill was driving in downtown Greensboro looking for a woman to pick up. He ultimately negotiated with someone who appeared to be a woman, and followed her into room 306 at the Golden Eagle Motel. In the motel room, Massengill took off his pants before being confronted by an armed man who came out of the bathroom. While this man held him at gunpoint, the "woman" removed several hundred dollars from Massengill's pants pockets. The "woman" was later identified by Massengill and by other witnesses as defendant Miller. After defendants left the room,

Massengill went to the front desk and told the desk clerk he had been robbed. The desk clerk called the police, and although Massengill originally told the police officer that he had been forced from the street into the motel room, after he was taken to the police station he described what actually happened.

Officer Parks of the Greensboro Police Department testified that on the night of 11 July 1982, he was participating in a stakeout at Gate City Chrysler-Plymouth because of some recent break-ins in the area. He testified that he observed defendant Miller on three occasions between 9:00 p.m. and 9:30 p.m., that he observed that defendant getting into a Ford automobile with a South Carolina license plate, and also observed a black male exit from a second floor room of the Golden Eagle Motel and enter the Ford. Officer Parks further testified that he followed the vehicle as it proceeded north, and checked its registration with police headquarters while following it. Upon receiving a report that the vehicle was improperly registered, Parks, who was in plain clothes, requested a marked patrol car to stop the vehicle. At approximately 10:20 p.m., Officer Farlow contacted Officer Parks over the police radio and pulled his patrol car behind the Ford and in front of Officer Parks' station wagon. Officer Farlow turned on his blue light and followed the Ford around a corner where it pulled over and stopped. Officer Parks testified that he observed Officer Farlow stop his vehicle and walk up to the Ford. He testified that he then heard what sounded like a firecracker and saw blue smoke rolling out of the driver's window of the Ford as it sped away. At that point, Parks, who had been approximately eighty-seven feet away, pulled his car closer and saw Officer Farlow lying in the street with a wound to his face. Officer Parks immediately radioed for help.

Officer Denny of the Greensboro Police Department testified that he investigated a wreck scene a short distance from where Officer Farlow was shot. Officer Denny observed a Ford automobile parked sideways in the front yard with the same South Carolina license plate as was on the car from which Officer Farlow was shot; he also observed fresh damage to a car parked in front of the residence and to the concrete steps leading up to the house. The residents of that house, Debra and Douglas Linkhous, both testified for the State. Ms. Linkhous testified that she and her husband were watching television between 10:30 p.m. and

11:00 p.m. that night when she heard a car hit their house. Mr. Linkhous testified that when he ran outside, he observed a black male jump out of the driver's side of the car.

Other witnesses testified to the capture of the defendants later that evening, and to the discovery of money, tools, and other objects upon a search of the Ford automobile. A supervisor in the police laboratory testified that fingerprints taken from items discovered in the vehicle and items found in room 306 of the motel matched the fingerprints of defendant Miller and defendant Roberts.

State's witness Vernon Thurlby testified concerning events that occurred on 9 July 1982 in South Carolina. Thurlby testified that he was abducted and subsequently robbed in a motel room by a man and a "woman" who, after an extensive *voir dire* examination by the court, Thurlby identified as defendants Roberts and Miller.

Defendant Miller presented the testimony of a couple who lived nearby the spot where Officer Farlow was shot, both of whom initially testified that fifteen to twenty minutes elapsed before the police responded to Officer Farlow after he was shot. Both of these witnesses, however, ultimately testified to some uncertainty as to the length of time between the shooting and the arrival of the police. Defendant Roberts presented no evidence.

The jury found the defendants guilty of both crimes and they were each sentenced to thirty years imprisonment for the armed robbery charge and twenty years for the assault charge, the sentences to run consecutively. From the judgments imposing these sentences, defendants appeal.

*Attorney General Rufus L. Edmisten, by John R. B. Matthis, Special Deputy Attorney General, John F. Maddrey, Assistant Attorney General, and Philip A. Telfer, Assistant Attorney General, for the State.*

*Adams, North, Cooke and Landreth, by Thaddeus A. Adams, III, for defendant-appellant Miller.*

*Appellate Defender Adam Stein, by Ann B. Petersen, Assistant Appellate Defender, for defendant-appellant Roberts.*

VAUGHN, Chief Judge.

[1]   The defendants argue that the trial court erred in several rulings related to in-court identification testimony of the defendants by State's witnesses Marvin Massengill, Douglas Linkhous and Vernon Thurlby. Upon defendants' motion to suppress the identifications, Judge Rousseau held *voir dire* hearings and determined that (1) some of the prior photographic line-ups shown to Massengill and Thurlby were unduly suggestive and should be suppressed; (2) the photographic line-up shown to Linkhous was not unduly suggestive; and (3) the in-court identifications of all three witnesses were of independent origin and therefore admissible. We affirm Judge Rousseau's rulings and overrule these assignments of error.

The rules relating to the admissibility of in-court identification testimony are well-settled. Generally, a witness may make an in-court identification of a defendant and any uncertainty in that identification goes to the weight and not the admissibility of the testimony. *State v. Billups*, 301 N.C. 607, 616, 272 S.E. 2d 842, 849 (1981). Moreover, it has been established that a photographic line-up is an acceptable basis for an in-court identification. *State v. Bundridge*, 294 N.C. 45, 56, 239 S.E. 2d 811, 819 (1978). The general rule allowing in-court identifications is, however, subject to the exception if a defendant's due process rights are violated if the in-court identification is tainted by a prior confrontation in circumstances shown to be "unnecessarily suggestive and conducive to irreparable mistaken identification." *State v. Covington*, 290 N.C. 313, 324, 226 S.E. 2d 629, 638 (1976). Put more abstractly, the pretrial procedure must not offend fundamental standards of decency, fairness and justice. *State v. Williams*, 38 N.C. App. 183, 187, 247 S.E. 2d 620, 622 (1978).

When a defendant claims that an in-court identification has been tainted by an improper confrontation, the trial judge should conduct a *voir dire* examination, make findings of fact and decide whether the in-court identification is of independent origin. *See State v. Shore*, 285 N.C. 328, 339, 204 S.E. 2d 682, 689 (1974). An in-court identification is of independent origin and hence competent where the in-court identification is based on the witness' observations at the time and scene of the crime. *State v. Fate*, 38 N.C. App. 68, 72, 247 S.E. 2d 310, 312 (1978). If the trial court

rules that the identification is of independent origin and the findings are supported by competent evidence, they are conclusive on appeal and must be upheld. *State v. Shore, supra.*

Our review of the *voir dire* testimony satisfies us that Judge Rousseau ruled correctly as to the in-court identifications. He conducted an extensive *voir dire* of all three witnesses to determine the basis for their identifications. Massengill testified that he viewed the defendants for ten to fifteen minutes in the motel room the night he was robbed. After the robbery, he described each defendant to the police. Massengill identified defendant Roberts from a group of photographs that were selected based on Massengill's description of the suspect, but was unable to identify Miller with certainty from photographs selected based on his description. On another occasion, Massengill did identify the defendant Miller from a photographic array. However, since Massengill testified that he identified Miller based on his female dress, the trial judge excluded this photographic identification of Miller. The trial court admitted Massengill's in-court identifications of both defendants on the grounds that they both had an independent origin.

The identifications of defendant Roberts by State's witness Linkhous based on the same photographic line-up showed to Massengill and on his in-court identification were properly admitted. Linkhous testified that on the night of the robbery, after hearing a noise followed by a second bang, he went outside and saw the defendant Roberts getting out of a car. Linkhous was between 20 to 30 feet away from Roberts and his view was aided by street lights, a porch light and the defendants' car lights. Whether or not the pretrial photographic array was tainted, the in-court identification clearly had an independent origin and was therefore proper.

Finally, although the photographic line-ups of both defendants shown to Vernon Thurlby, the victim of the South Carolina robbery, were found to be impermissibly suggestive in that the photographs suggested that each of the persons portrayed was being held in jail, the trial court properly found that each of the in-court identifications of the defendants had an independent origin. Thurlby's *voir dire* testimony indicated that he was robbed in a South Carolina motel room by two men, one of whom was

dressed as a female. During the robbery, Thurlby observed the defendants for an hour and a half, often from short distances. Furthermore, as did witnesses Massengill and Linkhous, Thurlby expressly testified that he based his in-court identifications on the actual viewing of the defendants, not on the photographs shown him. *Cf. State v. Mettrick*, 54 N.C. App. 1, 283 S.E. 2d 139 (1981) (no evidence of independent origin where, among other things, witness never asked if his in-court identification was based upon what he saw at the scene).

**[2]** Defendants further assert that the trial court erred in denying their motion to sequester witnesses Massengill, Linkhous and Thurlby. Such a motion is addressed to the discretion of the trial court and will not be overturned absent a showing of abuse of discretion. *State v. Cross*, 293 N.C. 296, 299-300, 237 S.E. 2d 734, 737 (1977). We find no abuse of that discretion here. In particular, defendants argue that the witnesses' in-court identifications of the defendants were impermissibly tainted because these witnesses were present when the court asked defendant Miller to raise his hand to identify himself to the jury. Defendants assert that this procedure enabled the witnesses to determine which defendant was Miller and which was Roberts. We disagree. The record shows that the witnesses could only see the backs of the defendants when Miller raised his hand, and Massengill later testified that he did not even recall the incident. *See State v. Fate*, 38 N.C. App. 68, 73, 247 S.E. 2d 310, 313 (1978) (rejecting defendant's contention that robbery victim identified the defendant merely because he was seated next to defense counsel; defendant's contention that a robbery victim comes to court "mentally preconditioned" to identify as robbers whomever might be on trial held without merit). No prejudice therefore inhered from the refusal to sequester.

**[3]** Defendants next argue that the trial judge committed prejudicial error by granting the State's motions to join for trial both crimes and both defendants, and in denying defendants' motions to sever the same. We hold that the trial court ruled correctly.

The threshold requirement for joinder of offenses is a transactional connection: "Offenses may be joined for trial if they are based on the same act or transaction or arise out of a series of acts or transactions which are connected together or are part of a

single scheme or plan." *State v. Silva*, 304 N.C. 122, 126, 282 S.E. 2d 449, 452 (1981). *Accord, State v. Phifer*, 290 N.C. 203, 225 S.E. 2d 786 (1976) (consolidation proper where offenses of same class and are so connected in time and place that evidence at trial upon one indictment would be competent and admissible on the other).

In the facts before us, the transactional connection between the robbery and the assault is manifest; however,

> [a] mere finding of the transactional connection . . . is not enough. . . . In ruling on a motion to consolidate, the trial judge must consider whether the accused can receive a fair hearing on more than one charge at the same trial; if consolidation hinders or deprives the accused of . . . [the] ability to present . . . [a] defense, the charges should not be consolidated.

*State v. Silva, supra,* at 126, 282 S.E. 2d at 452. The standard by which joinder of two criminal defendants is evaluated is similar to that of joinder of offenses, *see, e.g., State v. Brower*, 289 N.C. 644, 658-9, 224 S.E. 2d 551, 562 (1976) (whether appellant has been deprived of a fair trial by consolidation).

Defendants contend that joinder here denied them a fair trial. As a consequence of the joinder of offenses, defendant Miller claims that he was precluded from testifying about his allegedly passive role in the assault by the likelihood of vigorous examination as to the robbery of Massengill. Both defendants assert that only by the joinder of defendants did testimony concerning their previous encounter with Thurlby in South Carolina become admissible to prove the identity of the persons involved in the shooting of Officer Farlow. They argue that such evidence would not have been admissible if that charge had been tried separately.

We reject defendants' contentions. Evidence concerning the armed robbery was relevant to the issue of the identity of who shot Officer Farlow. The defendants were observed leaving the motel in the same car from which the shooting occurred. Defendant Miller's suggestion that he was somehow precluded from testifying about his passive role in the robbery is irrelevant. Whether a person had an active or passive role in a crime is not

the standard in this State for liability of persons acting in concert.

The testimony of Vernon Thurlby was relevant to the issue of the identity of the defendants as the perpetrators of both the assault and the robbery. That witness' testimony established that the defendants took from him his Savage Arms .32 caliber pistol when he was robbed. Therefore, the circumstances by which the defendants came into possession of the gun helped establish the identity of the defendants as the persons who shot Officer Farlow. *See State v. Ferree*, 54 N.C. App. 183, 184-5, 282 S.E. 2d 587, 588 (1981) ("[a] defendant who enters into a common design for a criminal purpose is equally deemed in law a party to every act done by others in furtherance of such design").

Evidence concerning both robberies was admissible regardless of joinder. Exceptions exist to the general rule that evidence concerning the commission of other offenses is not ordinarily admissible. One of these exceptions is applicable to the instant case:

> Where the accused is not definitely identified as the perpetrator of the crime charged and the circumstances tend to show that the crime charged and another offense were committed by the same person, evidence that the accused committed the other offense is admissible to identify . . . [the accused] as the perpetrator of the crime charged.

*State v. McClain*, 240 N.C. 171, 175, 81 S.E. 2d 364, 367 (1954). A motion for consolidation is addressed to the discretion of the trial judge and will not be disturbed upon appeal absent an abuse of that discretion, *State v. Bracey*, 303 N.C. 112, 277 S.E. 2d 390 (1981), and we find no such abuse here.

[4] Although the defendants assert that Judge Rousseau erroneously instructed the jury under what amounted to an "attempted felony murder" theory, and that they were prejudiced thereby, we find that the trial court properly instructed the jury concerning the offense of assault with a deadly weapon with intent to kill inflicting serious injury. The gist of defendants' argument is that Judge Rousseau improperly made the armed robbery an additional essential element of the assault with a deadly weapon charge. *See State v. Hill*, 23 N.C. App. 614, 209 S.E. 2d 528 (1974), *aff'd*, 287 N.C. 207, 214 S.E. 2d 67 (1975) (tracing G.S.

14-32(a) elements of offense). The judge further charged the jury that flight from the scene of the robbery would be a part of the robbery and if either one of the defendants participated in the robbery and was fleeing without a break in the flight and either one shot Officer Farlow, then the jury might conclude that Farlow was shot in the perpetration of the robbery.

The contested element in the judge's instructions on the assault charge was the instruction that to convict, the State must prove beyond a reasonable doubt that the shooting was done in the perpetration of an armed robbery. Under the facts of this case, these instructions were entirely proper in that they correctly instructed the jury on the legal consequences of persons acting in concert to commit a crime.

> Where two or more persons "join in a purpose to commit a crime, each of them, *if actually or constructively present,* is not only guilty as a principal if the other commits that particular crime, but . . . [that person] is also guilty of any other crime committed by the other in pursuance of the common purpose . . . or as a natural or probable consequence thereof."

*State v. Oliver,* 302 N.C. 28, 55, 274 S.E. 2d 183, 200 (1981) (emphasis in original). *See also State v. Small,* 301 N.C. 407, 412-13, 272 S.E. 2d 128, 132 (1980) (principals in the second degree, defined as those who are actually or constructively present at the place and time of the crime and who aid, abet, assist or advise in its commission, are punishable to the same extent as principals in the first degree).

The State's theory at trial was that the defendants, acting in concert, robbed Marvin Massengill and then fled in an automobile they had stolen from Vernon Thurlby three days earlier. This vehicle was stopped by Officer Farlow at the request of Officer Parks. When Farlow approached the driver's side, he was shot in the face. The jury was instructed that if the shooting of Officer Farlow happened during the commission of the armed robbery or during the flight therefrom, and the defendants had acted together in the commission of the robbery, they were both legally accountable for criminal acts occurring during their joint venture. The judge's instructions on the applicable law, then, are fully supported by the facts, and we find no error in them.

[5] Defendants assign error to the refusal of the trial court to give a requested instruction on interracial identification, *i.e.*, that it is more difficult to identify members of a different race than members of one's own. They cite Chief Judge Bazelon's concurring opinion in *United States v. Telfaire*, 469 F. 2d 552 (D.C. Cir. 1972) as authority for their position. The North Carolina case of *State v. Allen*, 301 N.C. 489, 272 S.E. 2d 116 (1980) governs this issue. In the case before us, as in the *Allen* case, "there is no indication that race in any way affected the identification of defendant by the witnesses," *id.* at 495, 272 S.E. 2d at 120, and this assignment of error is therefore overruled.

[6] Although the defendants cite *State v. Bradley*, 65 N.C. App. 359, 309 S.E. 2d 510 (1983), in support of their position that the trial court erred in denying the defendants' request for a jury instruction concerning the probative force of the fingerprint evidence, we find that case does not control the facts before us. In *Bradley*, the State relied primarily on fingerprint evidence to prove defendants' guilt, and in significant contrast to this case, there was evidence before the jury from which a reasonable inference could have been made that the prints were left by the defendant in circumstances unrelated to the crime. In the case before us, however, the record is devoid of evidence from which the jury could even infer that the prints were left by the defendants at a time or under circumstances not directly related to the crimes charged. In any event, even if defendants were entitled to an instruction on the probative force of the fingerprint evidence, such error would be harmless in that the defendants have not met their burden of showing prejudice, *i.e.*, that a different result would have been reached at trial. *See* G.S. 15A-1443(a). There was substantial evidence connecting defendants to the crimes with which they were charged, and no evidence from which the jury could have concluded the fingerprints were placed under circumstances unrelated to the crimes. This assignment of error is therefore overruled.

No error.

Judges BRASWELL and EAGLES concur.