STATE OF NORTH CAROLINA v. VINCENT TAN HALL, Defendant

No. COA98-525

(Filed 3 August 1999)

**1. Evidence— identification—in-court—hypnosis—essentially identical description before and after**

The trial court did not err in allowing the witness' in-court identification of defendant because even though the witness had been hypnotized by the police, her description of the assailant remained essentially identical before and after hypnosis. The witness' identification was based on her observations the night of the murder and attempted robbery, and was related immediately to police well before hypnosis. The only portion of the witness'

STATE v. HALL

[134 N.C. App. 417 (1999)]

testimony which might be considered "hypnotically refreshed" was that containing the minimal descriptive details and not her in-court identification of defendant.

**2. Evidence— identification—in-court—hypnotically refreshed descriptive details—failure to disclose hypnosis prior to testimony—harmless error**

Although a witness' in-court testimony regarding "hypnotically refreshed" descriptive details of the assailant and the State's failure to disclose the hypnosis prior to the witness' testimony were improper, the tardy disclosure is mitigated because the disclosure was: (1) prior to the witness' identification testimony and the comprehensive voir dire hearing on admissibility thereof, and (2) immediately upon the prosecutor's discovery of the witness' hypnosis. Further, it was harmless error because there was no reasonable possibility that the jury verdict would have been different had the additional descriptive testimony been excluded in light of other evidence including defendant's confessions to his friend and to a fellow prisoner.

**3. Evidence— identification—in-court—viewing defendant at trial**

The trial court properly denied defendant's request to suppress a witness' identification of defendant at trial as a participant in another robbery because the identification was not tainted by the fact that the witness observed defendant in open court.

**4. Evidence— prior crime or act—other robberies—corroboration—intent, motive, and plan**

The trial court did not err in admitting evidence of other robberies involving defendant because it was relevant and admissible under Rule 404(b) either to corroborate the accounts of other witnesses or to show defendant's intent, motive, and plan to commit armed robbery at the time of the victim's murder.

**5. Witnesses— cross-examination—discretion of trial court**

The trial court did not err in allowing cross-examination of defendant including inquiries involving a stolen credit card and other robberies because the scope of cross-examination is a matter within the sound discretion of the trial court.

STATE v. HALL

[134 N.C. App. 417 (1999)]

Appeal by defendant from judgment entered 5 August 1997 by Judge J.B. Allen Jr. in Wake County Superior Court. Heard in the Court of Appeals 26 January 1999.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Thomas F. Moffitt, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Anne M. Gomez, for defendant-appellant.*

JOHN, Judge.

Defendant appeals the trial court's judgment and commitment entered upon convictions by a jury of first-degree murder and armed robbery. We conclude the trial court committed no prejudicial error.

Defendant was indicted 16 December 1996 for the murder and attempted armed robbery of Keir Lohbeck (Lohbeck). The charges were consolidated and tried at the 28 July 1997 Criminal Session of Wake County Superior Court.

The State's evidence at trial tended to show the following: On 25 January 1994, Lohbeck and Catherine Harold (Harold), employees of a Raleigh Blockbuster Video store, closed the business at 1:00 a.m. As the pair walked to their automobiles in a well-lighted parking lot, Harold showed Lohbeck a photograph album containing photos from a recent trip. While looking at the album, Harold noticed a man walking in the distance. Once inside her automobile, Harold looked through the passenger window and saw Lohbeck talking to a man between his truck and another vehicle. As she began to drive off, Harold observed Lohbeck and the man struggling, heard a "bang" and then saw Lohbeck fall.

Lohbeck died shortly thereafter from a .32 caliber gunshot wound to the neck. Harold described the assailant as a black male, approximately thirty years old with some facial hair, 5'10" tall and weighing between one hundred sixty and one hundred eighty pounds, wearing a white hooded sweatshirt with red lettering. Harold indicated she had clearly seen the man's side profile at a distance of seven feet.

On 2 February 1994, Harold was interviewed and hypnotized by City of Raleigh police officer Michael Hunter (Hunter). During hypnosis, Harold related a description similar to that previously given, but added that the man had small eyes, detailed lips and a broad nose.

At trial, Harold described the assailant consistent with her pre-hypnosis statements, but also included the additional details which arose during hypnosis. Upon learning Harold had previously been hypnotized, the prosecutor immediately informed the judge and defense counsel of the hypnosis. Notwithstanding, the prosecutor also sought permission to tender an in-court identification of defendant by Harold, based solely upon her observations the night of the murder. Defendant thereupon moved to suppress Harold's identification evidence, asserting it would constitute inadmissible hypnotically refreshed testimony. The trial court conducted a *voir dire* hearing, rendered specific findings of fact, and denied defendant's motion. Harold thereupon identified defendant before the jury as the individual who shot Lohbeck.

Darrold Brown (Brown), one of defendant's roommates, testified for the State in exchange for a reduced sentence on a robbery charge. Brown indicated he heard defendant enter their apartment, located across the street from the Blockbuster store in question, around 1:00 a.m. on 25 January 1994. At 8:00 a.m. that morning, defendant told Brown he had killed a man at the Blockbuster store in an attempt to rob him and stated that "he had to get rid of the gun or they'd be able to connect him" with the crime. Brown further testified he and defendant robbed Burger King restaurants in Fuquay-Varina and Raleigh shortly after the Blockbuster killing.

Defendant testified he was in his apartment on 25 January 1994 around 1:00 a.m. talking to his girlfriend on the telephone. Defendant's girlfriend and another roommate corroborated this testimony, and Hin Hall, defendant's brother and also a roommate, testified defendant went to bed that morning between 1:30 and 2:00 a.m. Defendant stipulated that he had pleaded guilty to the 17 August 1994 robbery of a Fayetteville Burger King.

On 5 August 1997, the jury found defendant guilty of attempted armed robbery and first-degree murder on the theory of felony murder. The trial court arrested judgment on the armed robbery charge and sentenced defendant to life imprisonment in the murder case. Defendant timely appealed.

Initially, we note defendant's appellate brief includes no argument addressed to assignments of error one, two, three, four, six, seven, thirteen, fourteen, fifteen, eighteen, nineteen, twenty, twenty-three, twenty-four, twenty-five, or twenty-six. Accordingly these assignments of error are deemed abandoned, *see* N.C.R. App.

P. 28(b)(5) ("[a]ssignments of error not set out in the appellant's brief . . . will be taken as abandoned"), and we do not address them.

**[1]** In his first assignment of error, defendant contends Harold's in-court identification was hypnotically refreshed evidence and admission thereof violated our Supreme Court's decision in *State v. Peoples*, 311 N.C. 515, 319 S.E.2d 177 (1984). We conclude otherwise.

*Peoples* held that hypnotically refreshed testimony is "inadmissible in judicial proceedings" because it is subject to suggestive circumstances rendering it "inherently unreliable." *Id.* at 533, 319 S.E.2d at 188. However, "[a] person who has been hypnotized may testify as to facts which he related before the hypnotic session." *Id.*

In the case *sub judice*, the trial court conducted a comprehensive *voir dire* hearing during which Harold stated the hypnosis had no effect on her memory of the assailant's side profile, and that she recognized defendant based upon her observations the night of the murder. She related that the parking lot on the night of the murder was well lighted, that she had a clear view of the assailant's side profile from a distance of six to seven feet, and that she recognized defendant as the assailant when she saw his side view for the first time in the courtroom.

The trial court rendered extensive findings of fact, which are conclusive on appeal if supported by competent evidence. *State v. Miller*, 69 N.C. App. 392, 397, 317 S.E.2d 84, 88 (1984). The court noted Harold testified there were no suggestions during the hypnotic sessions "in any way for her to pick out or identify" any individual, and found as fact *inter alia* that: 1) the Blockbuster parking lot was sufficiently lighted to permit Lohbeck to view Harold's photograph album, 2) Harold observed the assailant's side profile at a distance of six to seven feet, 3) Lohbeck and the assailant faced each other giving Harold a clear unobstructed view of the assailant's side profile, 4) Harold viewed numerous photographs of suspects and had seen defendant on television months prior to trial, but refused to identify anyone as the assailant based on her need to view a side profile for a positive identification, 5) that Harold "had not seen a side view of the defendant until she saw him in court" on 28 July 1997, at which time she notified a witness coordinator that defendant was the person who shot Lohbeck, and 6) that Harold's description of the assailant remained essentially identical before and after hypnosis. Further, the court acknowledged that additional description details, *i.e.*, small

eyes, flat nose, and well defined lips, surfaced during hypnosis, but concluded the hypnosis did not affect Harold's overall description which remained "substantially the same," and that Harold's identification of defendant

> was of an independent origin and not tainted by any hypnotic sessions or anything else that any law enforcement officers . . . had done in this matter.

We believe the trial court properly analyzed the evidence before it. Significantly, the only portion of Harold's testimony which might accurately be characterized as "hypnotically refreshed" was that containing the minimal descriptive details and *not* her in-court identification of defendant. The trial court's determination that Harold's identification was based upon her observations the night of the murder and related immediately to police well before hypnosis, *see Harker v. State of Md.*, 800 F.2d 437, 443 (4th Cir. 1986) (description of assailant by witness under hypnosis "closely matched the description he had given to police shortly after the shooting"), and that it was "not tainted" by her subsequent hypnotic sessions, is uncontradicted by any evidence in the record. Hence Harold's identification of defendant as Lohbeck's killer at trial 1) was of "independent origin," *Miller*, 69 N.C. App. at 396, 317 S.E.2d at 88, 2) was unaffected by the intervening circumstance of hypnosis, and 3) did not constitute "hypnotically refreshed" testimony. Therefore, *Peoples* is inapposite to that portion of Harold's testimony.

[2] On the other hand, Harold's in-court testimony regarding "hypnotically refreshed" descriptive details of the assailant and the State's failure to disclose the hypnosis of Harold prior to her testimony were improper under *Peoples. See Peoples*, 311 N.C. at 533-34, 319 S.E.2d at 188 ("hypnotically refreshed testimony is inadmissible in judicial proceedings," and "party proffering the testimony of a previously hypnotized subject is under a duty to disclose the fact of th[e] hypnosis to the court and counsel . . . before the testimony of the witness").

However, the tardy disclosure of Harold's hypnosis is mitigated by the circumstances that disclosure came 1) prior to Harold's identification testimony and the comprehensive *voir dire* hearing on admissibility thereof, and 2) immediately upon discovery of Harold's hypnosis by the prosecutor, *see* N.C.G.S. § 15A-907 (1997) (if party "prior to or during trial" discovers additional evidence subject to disclosure, party "must promptly notify the attorney for the other party of the existence of the additional evidence").

**STATE v. HALL**

[134 N.C. App. 417 (1999)]

Nonetheless, the belated discovery by the prosecutor of law enforcement's hypnosis of Harold and the, at best, negligent failure of the police to apprize the prosecutor of the hypnosis and to retain tapes of the sessions, necessitate reiteration here of the caution to "those who use hypnosis [that] it is a procedure to be executed with care," *Peoples*, 311 N.C. at 534, 319 S.E.2d at 188, and that the "procedural safeguards" noted in *Peoples* should "be followed in the use of hypnosis for criminal investigative purposes," *id.*

As to admission of hypnotically refreshed testimony by Harold of certain descriptive features of the assailant, we first note again the trial court's finding, supported by the record and conclusive on appeal, *Miller*, 69 N.C. App. at 397, 317 S.E.2d at 88, that her description remained "essentially the same" prior to and following hypnosis, *see Harker*, 800 F.2d at 443. Moreover, discrepancies in descriptions are ordinarily for the jury to hear and consider in weighing the credibility of the witness. *See State v. Billups*, 301 N.C. 607, 616, 272 S.E.2d 842, 849 (1981).

In any event, such error as may have occurred in consequence of the foregoing contraventions of *Peoples* was harmless error which created no "reasonable possibility" the jury verdict would have been different had Harold's additional description testimony been excluded. *See* N.C.G.S. § 15A-1443(a) (1997) (in order for error to be prejudicial, there must be a "reasonable possibility that, had the error in question not been committed, a different result would have been reached"); *see also State v. Annadale*, 329 N.C. 557, 571, 406 S.E.2d 837, 845 (1991) (harmless error analysis applied to in-court identification following hypnosis).

First, we reiterate our holding that Harold's in-court identification of defendant as Lohbeck's killer did not constitute "hypnotically refreshed" testimony. In addition to Harold's designation of defendant as the perpetrator, moreover, the State introduced evidence of defendant's confessions to his friend and roommate Brown and to a fellow prisoner, William Johnson, as well as testimony by the victim identifying defendant as participant in another robbery which Brown testified he and defendant had committed together. In light of the overwhelming weight of this evidence, any error resulting from belated disclosure of Harold's hypnosis or in admitting her testimony concerning additional descriptive details regarding the assailant which surfaced during hypnosis was harmless. *See id.*

**[3]** Defendant next asserts the trial court erred by denying his motion to suppress in-court identification testimony by Sandra Jacobs (Jacobs) of defendant as participant in the robbery of a Burger King in Fuquay-Varina. This assignment of error is unfounded.

Initially, we note defendant argued different grounds for his motion at trial than those presented to this Court. Defendant asserted below that his identification by Jacobs resulted from impermissibly suggestive circumstances, specifically that Jacobs

> has been sitting in [the courtroom] and . . . defendant is seated at counsel table and has been identified as the defendant in this case. . . .

Our Supreme Court has held

> the viewing of a defendant in the courtroom during . . . a criminal proceeding by witnesses who are offered to testify as to identification of the defendant is not, of itself, such a confrontation as will taint an in-court identification . . . .

*State v. Covington*, 290 N.C. 313, 324, 226 S.E.2d 629, 638 (1976). After a *voir dire* hearing, the trial court concluded that "identification [of defendant by Jacobs] was not tainted by . . . the fact that she was here after lunch today and observed the defendant in open court." Based upon the principles set out in *Covington* and our determination that the facts found by the trial court were supported by the evidence and thus conclusive on appeal, *Miller*, 69 N.C. App. at 397, 317 S.E.2d at 88, we hold the court properly rejected defendant's motion to suppress the identification testimony of Jacobs.

Defendant now argues to this Court that Jacobs had no reasonable possibility of observing the robber in a manner sufficient to make a subsequent identification. Because this argument was not advanced at trial, it has not been preserved for appellate review. N.C.R. App. P. Rule 10(b) ("to preserve a question for appellate review, a party must have presented to the trial court a timely . . . motion, stating the specific grounds for the ruling the party desired . . . ."); *State v. Waddell*, 130 N.C. App. 488, 503, 504 S.E.2d 84, 93 (1998) (citations omitted) (where theory argued on appeal not raised in trial court, "the law does not permit parties to swap horses between courts in order to get a better mount [on appeal]").

Notwithstanding, we have considered the record in light of defendant's new argument. *See* N.C.R. App. P. Rule 2. Suffice it to

state the trial court's findings were supported by the evidence adduced at the hearing, *see Miller*, 69 N.C. App. at 397, 317 S.E.2d at 88, and that the court did not err in admitting the identification of defendant by Jacobs as perpetrator of the Burger King robbery. *See Manson v. Brathwaite*, 432 U.S. 98, 116, 53 L. Ed. 2d 140, 155 (1977) (excluding evidence from jury is drastic sanction limited to manifestly suspect identification testimony; anything short of that is "for the jury to weigh . . . [in that] evidence with some element of untrustworthiness is customary grist for the jury mill").

[4] Defendant next challenges the admission of Brown's testimony that he and defendant robbed Burger King restaurants in Fuquay-Varina and Raleigh. Defendant argues the State's N.C.G.S. § 8C-1, Rule 404(b) (Supp. 1998) (Rule 404(b)), "other crimes" evidence of defendant's prior misconduct was inadmissible, and in any event cumulative and prejudicial such that it should have been excluded under N.C.G.S. § 8C-1, Rule 403 (1992) (Rule 403). We do not agree.

While evidence of prior misconduct may not be introduced if

its probative value is . . . limited *solely* to tending to establish the defendant's propensity to commit a crime such as the crime charged,

*State v. Stager*, 329 N.C. 278, 303-04, 406 S.E.2d 876, 890 (1991) (emphasis in original), it may be admitted if it 1) constitutes "substantial evidence tending to support a reasonable finding by the jury that the defendant committed a similar act or crime," *id.* at 303, 406 S.E.2d at 890, 2) is "of a type made admissible under [Rule 404(b)]," *id.*, such as to show the defendant's "motive, opportunity, intent, preparation, plan, knowledge, [or] identity," Rule 404(b), and 3) is "logical[ly] relevan[t]," 1 Kenneth S. Broun, *Brandis & Broun on North Carolina Evidence* § 95 (5th ed. 1998)[hereinafter *Brandis & Broun*], "for some purpose other than showing the defendant's propensity for the type of conduct at issue, *Stager*, 329 N.C. at 303, 406 S.E.2d at 890. Moreover, the listing of "proper purpose[s]" under Rule 404(b) is not exclusive. 1 *Brandis & Broun* § 95.

In addition, our Supreme Court has emphasized that Rule 404(b) is a "general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant," *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990) (emphasis in original); nonetheless, such evidence must involve facts sufficiently similar to those of the charged offense which tend to support a reasonable inference they were com-

mitted by the same person, *Stager*, 329 N.C. at 303, 406 S.E.2d at 890, and the probative value thereof must not be substantially outweighed by its prejudicial effect, G.S. § 8C-1, Rule 403; *State v. Boczkowski*, 130 N.C. App. 702, 706, 504 S.E.2d 796, 799 (1998).

On *voir dire*, Brown testified he and defendant robbed a Raleigh Burger King on 14 May 1994 and a Fuquay-Varina Burger King on 22 February 1994, and described the circumstances surrounding each robbery. Brown's testimony was later corroborated by the Burger King employees who were robbed, including Jacobs who identified defendant as one of the robbers and whose testimony itself was later corroborated by Brown's identification of her as a robbery victim.

In its findings, the trial court noted *inter alia* that Brown and defendant were roommates, that defendant told Brown the morning of the murder he had shot a Blockbuster employee in a robbery attempt and that defendant owned a handgun and sawed-off shotgun during the time period in which the Burger King robberies occurred. The court recited certain similarities between the Blockbuster murder and the Burger King robberies, indicating that 1) each had occurred in the dark early morning hours while the affected commercial establishment was empty and closed, 2) defendant waited in the darkness and then, armed with a firearm, forced or attempted to force an employee into the establishment in order to rob it, 3) all three crimes occurred in Wake County within a four month period, 4) the establishments closed late or opened early, and 5) all were robbed pursuant to a plan.

Following recitation of its detailed findings of fact, the trial court ruled evidence of the Burger King robberies was relevant and admissible under Rule 404(b) because similar to the crime charged at trial and indicative of defendant's intent, motive and plan to commit armed robbery at the time of Lohbeck's murder. The court also held under Rule 403 that the probative value of the evidence was not substantially outweighed by its prejudicial effect. Finally, the court instructed the jury both prior to Brown's testimony and at the close of all evidence to consider the evidence, "if [it] believe[d] th[e] evidence," solely for the limited purpose of showing defendant's motive, intent or plan.

Based upon the record and the trial court's conclusive findings of fact, *see Miller*, 69 N.C. App. at 397, 317 S.E.2d at 88, we hold the court did not err in allowing evidence of defendant's participation in

the Burger King robberies. Further, the exclusion of evidence under Rule 403 is a matter left to the sound discretion of the trial court. *Coffey*, 326 N.C. at 281, 389 S.E.2d at 56. We do not believe defendant has demonstrated an abuse of discretion and therefore decline to disturb the trial court's ruling on appeal. *See State v. Robinson*, 327 N.C. 346, 356-57, 395 S.E.2d 402, 408 (1990), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995) (abuse of discretion only where ruling is manifestly unsupported by reason).

Notwithstanding, defendant insists that "[o]verall, the [Rule 404(b)] evidence was cumulative and emotional" and presented to inflame the jury. Again we disagree.

The admission of relevant evidence is left to the sound discretion of the trial court, *Stager*, 329 N.C. at 308, 406 S.E.2d at 893, and that discretionary ruling will be reversed on appeal "only upon a showing that the ruling was so arbitrary that it could not have been the result of a reasoned decision," *State v. Jones*, 347 N.C. 193, 213, 491 S.E.2d 641, 653 (1997).

The trial court *sub judice* properly allowed evidence under Rule 404(b) either to corroborate the accounts of other witnesses or for the purpose of showing defendant's motive, intent or plan to commit the instant crime. In addition, the court properly instructed the jury prior to and after presentation of the evidence specifically limiting the jury's consideration thereof. Under these circumstances, admission of this evidence cannot fairly be characterized as arbitrary and unreasonable, *see id.*, and thus was not error.

**[5]** Finally, defendant maintains the trial court committed prejudicial error by allowing "improper and highly prejudicial cross-examination of defendant," including inquires involving a stolen credit card, the Fuquay-Varina and Raleigh Burger King robberies, and the robbery of a Fayetteville Burger King to which defendant pleaded guilty. We have carefully considered defendant's arguments, note that the scope of cross-examination is a matter within the sound discretion of the trial court, *State v. Bronson*, 333 N.C. 67, 79, 423 S.E.2d 772, 779 (1992), and conclude the court committed no prejudicial error in allowing the challenged cross-examination. *See* G.S. § 15A-1443(a).

No error.

Judges GREENE and HUNTER concur.