STATE OF NORTH CAROLINA v. COSMO CAPORASSO

No. COA97-172

(Filed 6 January 1998)

1. **Evidence and Witnesses § 402 (NCI4th)— in-court identifications—absence of pretrial identifications—observations of witnesses**

     Three witnesses were properly permitted to make in-court identifications of defendant without first being required to submit to other nonsuggestive identification procedures where none of the witnesses participated in pretrial identifications, and their identifications of defendant were based solely upon their observations of defendant at times and locations relating to the crimes charged.

2. **Criminal Law § 413 (NCI4th Rev.)— testimony about threats by defendant—denial of recess to investigate**

     The trial court did not err by allowing a witness to testify about threats made by defendant the evening before the trial

STATE v. CAPORASSO

[128 N.C. App. 236 (1998)]

without granting defendant's motion for a recess to investigate this allegation and to question bailiffs who purportedly witnessed defendant making the threats where defendant had time at other recesses to interview the bailiffs; defendant could have called the bailiffs to the stand or recalled the witness for further cross-examination after investigating the alleged threats by defendant; and defendant's motion for a recess was not based on a constitutional right and was properly within the trial court's discretion.

**3. Criminal Law § 103 (NCI4th Rev.)— statement of defendant—discovery—additional testimony supporting disclosed statement**

A witness was not permitted to testify in violation of the discovery statute where the State revealed the substance of an oral statement made by defendant to the witness in which defendant offered to pay the witness if he would plead guilty to robberies for which defendant was charged, and the witness's additional testimony that defendant admitted he wore a hat or bandanna and carried a gun during the robberies simply supported the statements disclosed in discovery. N.C.G.S. § 15A-903(a)(2).

**4. Jury § 260 (NCI4th)— peremptory challenges—lack of attention and maturity—no Batson violation**

The trial court did not err by allowing the State to peremptorily challenge two African-American prospective jurors where the prosecutor stated that one juror was excused because she seemed bored with the proceedings and exhibited a general lack of attention and that the second juror was excused due to his young age and lack of maturity.

Appeal by defendant from judgments entered 9 August 1996 by Judge W. Douglas Albright in Guilford County Superior Court. Heard in the Court of Appeals 18 November 1997.

*Attorney General Michael F. Easley, by Assistant Attorney General Robert O. Crawford, III, for the State.*

*John Bryson for defendant-appellant.*

MARTIN, Mark D., Judge.

Defendant appeals from judgments entered upon a jury verdict of guilty of three counts of robbery with a dangerous weapon.

STATE v. CAPORASSO

[128 N.C. App. 236 (1998)]

Defendant received two sentences of 126 months to 161 months and one sentence of 101 months to 131 months, to run consecutively.

At trial, the State's evidence tended to show that on 30 June 1995, three men entered Food Rite Grocery on Highway 62 in Climax, North Carolina. James Wall, a Pepsi-Cola sales representative, was present in the store setting up a display before closing when he observed three white males walking around the store. One of the males, which Wall identified at trial as defendant, asked Wall where the bathroom was. Before leaving the parking lot, Wall observed the three men, including defendant, leave the building from the front entrance. Wall saw James Clinton Smith, the store manager, lock the store and walk to his car.

Once Smith was in his car, he was robbed at gunpoint by two white males and one black male. Although unable to make a positive identification, Smith stated defendant looked similar to one of his assailants.

On 31 July 1995 a second robbery occurred at Bojangle's Restaurant on East Bessemer Avenue in Greensboro, North Carolina. Specifically, Michael Damon, the assistant manager, was accosted by two armed men wearing bandanas who stole $2,100 after forcing Damon to open the restaurant's safe. During the police investigation, Damon selected defendant and the co-defendant, Charles Pegram, from photo arrays as the robbers. He also identified defendant at trial.

Similarly, on 3 August 1995 at 6:00 a.m., two white males entered Bojangle's Restaurant on South Main Street in High Point, North Carolina and asked Keimarsha Fitzgerald, the cashier, where the bathroom was located. The men returned to the front of the store wearing bandannas. One of the men remained in the front of the store and the other man forced Ken Underwood, the manager, to open the safe and stole $579 in a red bank bag. Perry Connard, a customer, followed the two men and saw them enter a blue BMW driven by a black male. Connard noted the car had a temporary tag with license number 1811803.

At trial, Fitzgerald stated she observed the two men without their masks for a few seconds when they first entered the store. Moreover, at trial, she positively identified defendant as one of the robbers.

On 3 August 1995 at approximately 6:30 to 7:00 a.m., Sheila Fields of Greensboro noticed a blue BMW with a temporary tag in her apartment complex. In addition, she observed two white males and one

STATE v. CAPORASSO

[128 N.C. App. 236 (1998)]

black male sitting in the car. When Fields returned to her apartment, she discovered a red bank bag near the entrance of the parking lot, which she later turned over to the police. At trial, Fields identified defendant as one of the passengers in the BMW.

In addition to the above eye-witness identifications offered at trial, Kenneth Moody, after initially refusing to testify, testified defendant threatened him on the evening before trial. Moreover, Moody stated defendant offered him $18,000 and a gold chain if Moody pled guilty to the crimes charged against defendant.

On appeal, defendant contends the trial court erred by (1) allowing James Wall, Keimarsha Fitzgerald, and Sheila Fields to make in-court identifications of defendant; (2) allowing Kenneth Moody to testify to threats made by defendant without granting defendant's motion for a recess to investigate these claims; (3) allowing the State to introduce evidence in violation of the discovery statute; and (4) allowing the prosecutor to exercise peremptory challenges to exclude African-American jurors.

I.

[1] Defendant contends the trial court erred by allowing James Wall, Keimarsha Fitzgerald, and Sheila Fields to make in-court identifications of defendant without first requiring them to submit to other non-suggestive identification procedures.

"Generally, a witness may make an in-court identification of a defendant and any uncertainty in that identification goes to the weight and not the admissibility of the testimony." *State v. Miller*, 69 N.C. App. 392, 396, 317 S.E.2d 84, 87-88 (1984). "An in-court identification is . . . competent where the in-court identification is based on the witness' observations at the time and scene of the crime." *Id.* at 396, 317 S.E.2d at 88. Pre-trial identifications are not necessary for in-court identifications to be admissible. *State v. Tyson*, 278 N.C. 491, 496, 180 S.E.2d 1, 4 (1971).

While in-court identifications are generally admitted, they may be excluded if "tainted by a prior confrontation in circumstances shown to be 'unnecessarily suggestive and conducive to irreparable mistaken identification.' " *Miller*, 69 N.C. App. at 396, 317 S.E.2d at 88 (quoting *State v. Covington*, 290 N.C. 313, 324, 226 S.E.2d 629, 638 (1976)). However, "viewing [] a defendant in the courtroom during the various stages of a criminal proceeding by witnesses who are offered to testify as to identification of the defendant is not, of itself, such a

confrontation as will taint an in-court identification . . . ." *Covington*, 290 N.C. at 324, 226 S.E.2d at 638. *See State v. Haskins*, 278 N.C. 52, 57, 178 S.E.2d 610, 612 (1971).

In the present case, the in-court identifications by Wall, Fitzgerald, and Fields were properly admitted. Although the jury may give different weight to each witness' testimony based on the reliability of each identification, in-court identifications, which are not tainted by unnecessarily suggestive pre-trial confrontations, are admissible. *Miller*, 69 N.C. App. at 396, 317 S.E.2d at 87-88. Since none of the above witnesses participated in pre-trial identifications, their testimonies, as noted by the trial court, were "unimpaired by any constitutionally defective pre-trial identification procedure[s]."

Moreover, the identifications by Wall, Fitzgerald, and Fields were based solely on their observations of defendant at times and locations relating to the crimes. As a result, the trial court properly determined their testimony was competent.

Specifically, Wall observed defendant in Food Rite Grocery on 30 June 1995 when defendant entered the store with two other males. In addition to observing defendant moving through the store, defendant asked Wall to direct him to the bathroom. Although Wall did not observe defendant rob the store manager in the parking lot, Wall did see defendant and his companions exit the store immediately before the store manager. Moreover, Wall's description of defendant matches the store manager's description of the individual who accosted him.

Fitzgerald, who worked as a cashier in Bojangle's on 31 July 1995, testified defendant entered the store and then requested to use the bathroom. Subsequently, Fitzgerald observed defendant reappear with a red bandana covering his face. For two to three minutes, defendant remained at the front of the store where Fitzgerald continued to view him.

Early on the morning of 3 August 1995, Fields noticed three men sitting in a blue BMW in the parking lot of her apartment complex. As Fields walked to her car, she observed a white male in the front passenger seat whom she identified at trial as defendant.

Since none of the witnesses' testimony was tainted by unnecessarily suggestive pre-trial identification procedures and each witness had some basis for identifying defendant, the trial court did not err by allowing the in-court identifications. Accordingly, defendant's contentions are without merit.

II.

[2]   Defendant next contends the trial court erred by allowing Kenneth Moody to testify to threats made by defendant without granting defendant's motion for a recess to investigate these claims.

"A motion for a continuance is ordinarily addressed to the sound discretion of the trial court. Therefore, the ruling is not reversible on appeal absent an abuse of discretion." *State v. Smith*, 310 N.C. 108, 111, 310 S.E.2d 320, 323 (1984). An abuse of discretion is defined as a decision "manifestly unsupported by reason," *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985), or "so arbitrary that it could not have been the result of a reasoned decision." *State v. Wilson*, 313 N.C. 516, 538, 330 S.E.2d 450, 465 (1985).

When "a motion to continue is based on a constitutional right, then the motion presents a question of law which is fully reviewable on appeal." *State v. Jones*, 342 N.C. 523, 530-531, 467 S.E.2d 12, 17 (1996) (citing *State v. Smith*, 310 N.C. 108, 111, 310 S.E.2d 320, 323 (1984)). To establish that a motion to continue is based on a constitutional right, defendant must show "how his case would have been better prepared had the continuance been granted or that he was materially prejudiced by the denial of his motion." *State v. Covington*, 317 N.C. 127, 130, 343 S.E.2d 524, 526 (1986).

In the present case, the trial court did not err in failing to grant defendant's motion for a recess. At trial, Moody initially refused to testify but agreed to testify after being cited for contempt. Before testifying, Moody informed the trial court he was threatened by defendant on the evening before trial. Subsequently, the trial court found Moody had been threatened by defendant. Defendant then moved for a brief recess to investigate the allegations and question the bailiffs who, according to Moody, witnessed defendant making threats.

Although the trial court denied the motion for a recess, defendant had sufficient time before the end of trial to investigate Moody's claims and prevent material prejudice to defendant. Specifically, defendant had time at other recesses to interview the bailiffs who possibly witnessed defendant's threats to Moody. Moreover, defendant could have called the bailiffs to the stand or recalled Moody for further cross-examination after investigating the alleged threats by defendant.

Because defendant has not shown how he would have been better prepared or proved material prejudice by the trial court's denial of

his request, his motion for a recess was not based on a constitutional right and was properly within the trial court's discretion. Accordingly, defendant's contention is without merit.

## III.

**[3]** Defendant next contends the trial court erred by allowing the State to introduce evidence in violation of the discovery statute. More particularly, defendant argues that Kenneth Moody's testimony at trial exceeded the statements previously revealed to defendant through discovery.

Pursuant to N.C. Gen. Stat. § 15A-903(a)(2), the prosecution, upon motion of defendant, must "divulge, in written or recorded form, the substance of any oral statement relevant to the subject matter of the case made by the defendant, . . . within the possession, custody, or control of the State . . . ." N.C. Gen. Stat. § 15A-903(a)(2) (1988). "As used in the statute, 'substance' means: 'Essence; the material or essential part of a thing . . . .' " *State v. Bruce*, 315 N.C. 273, 280, 337 S.E.2d 510, 515 (1985) (citing BLACK'S LAW DICTIONARY 1280 (rev. 5th ed. 1979)).

Where a party has failed to comply with the discovery statute, N.C. Gen. Stat. § 15A-903, the trial court may, in its discretion, issue sanctions. *State v. Alston*, 307 N.C. 321, 330, 298 S.E.2d 631, 639 (1983). Sanctions imposed for discovery violations will not be reversed absent a showing of abuse of discretion. *Id.*

In the present case, the prosecution revealed the substance of the oral statement made by defendant to Moody. While defendant and Moody were in jail, defendant offered Moody $18,000 and a gold chain if Moody pled guilty to the crimes charged against defendant. At trial, when the prosecution asked Moody what the defendant discussed with him, Moody stated defendant wanted him to plead guilty to five robberies, including the robberies of the Bojangle's Restaurants in High Point and Greensboro. According to Moody, defendant admitted he wore either a hat or a bandanna during the robberies and carried a 9mm gun or a revolver.

The prosecution did not violate the discovery statute because the substance of the defendant's statements was disclosed. Specifically, defendant's statements revealed he wanted Moody to "take the wrap (sic)" for him. To successfully plead guilty to crimes he did not commit, Moody would need to know specifics of the crimes. The additional statements Moody attributed to defendant simply supported

the statements disclosed in discovery. Accordingly, the trial court's ruling was not arbitrary and capricious and defendant's contentions are without merit.

## IV.

[4] Finally, defendant contends the trial court erred by allowing the prosecutor to exercise peremptory challenges to exclude African-American jurors.

Article I, Section 26 of the Constitution of North Carolina and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibit using peremptory challenges to exclude jurors based solely on their race. *State v. Glenn*, 333 N.C. 296, 301, 425 S.E.2d 688, 692 (1993).

In *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), *modified, Powers v. Ohio*, 499 U.S. 400, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991), the United States Supreme Court created a three-pronged analysis to use when determining whether a prosecutor impermissibly excluded prospective jurors because of their race. *State v. Kandies*, 342 N.C. 419, 434, 467 S.E.2d 67, 74, *cert. denied*, 117 S. Ct. 237, 136 L. Ed. 2d 167 (1996). First, to establish a *prima facie* case of discrimination, a criminal defendant must demonstrate that the prosecutor exercised peremptory challenges on the basis of race. *Id.* Second, to rebut the defendant's *prima facie* showing, the prosecution must "articulate legitimate reasons which are clear and reasonably specific and related to the particular case to be tried which give a neutral explanation for challenging jurors of the cognizable group." *State v. Jackson*, 322 N.C. 251, 254, 368 S.E.2d 838, 840 (1988), *cert. denied*, 490 U.S. 1110, 109 S. Ct. 3165, 104 L. Ed. 2d 1027 (1989). Ultimately, the trial court must determine whether the defendant has satisfied his burden of proving intentional discrimination. *Kandies*, 342 N.C. at 434, 467 S.E.2d at 75.

In examining the prosecution's explanations for excluding prospective jurors, the appellate court should not overturn the trial court's findings unless the appellate court is "convinced that its determination was clearly erroneous." *Hernandez v. New York*, 500 U.S. 352, 369, 111 S. Ct. 1859, 1871, 114 L. Ed. 2d 395, 412 (1991). "[E]valuation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.' " *State v. Robinson*, 336 N.C. 78, 94, 443 S.E.2d 306, 313 (1994) (citing *Hernandez*, 500 U.S. at 365, 111 S. Ct. at 1869, 114 L. Ed. 2d at 409).

In the present case, after the jury was empaneled, the trial court found defendant had made a *prima facie* case of racial discrimination in the exercise of the prosecution's peremptory challenges. As a result, the trial court required the prosecution to present its reasons for the exclusion of two African-American jurors. Specifically, the prosecution maintained it excluded juror Mitchell because she "seemed . . . bored with the proceedings" and exhibited "a general lack of attention." The prosecution also excused juror Crawford due to his young age and lack of maturity.

When, as here, a juror displays a lack of attention, the prosecution may use a peremptory challenge to excuse the juror from service. *See Robinson*, 336 N.C. at 96, 443 S.E.2d at 314. Similarly, the prosecution may seek jurors who are stable and mature, *State v. Jackson*, 322 N.C. 251, 257, 368 S.E.2d 838, 840 (1988), *cert. denied*, 490 U.S. 1110, 109 S. Ct. 3165, 104 L. Ed. 2d 1027 (1989), and exclude those "who do not appear to understand legal rules." *State v. Porter*, 326 N.C. 489, 499, 391 S.E.2d 144, 151 (1990). As a result, the trial court did not err by allowing the prosecution to remove jurors Mitchell and Crawford from the jury. Accordingly, defendant's contentions are without merit.

No error.

Judges EAGLES and WYNN concur.