STATE OF NORTH CAROLINA v. STEPHEN ARTEMUS CHRISTIAN

No. COA01-77

(Filed 7 May 2002)

### 1. Constitutional Law— presence at all stages—noncapital trial—waiver

The trial court did not err in a prosecution for six charges of assault, conspiracy to murder, and discharging a weapon into occupied property by removing a trial juror after a hearing at which defendant's attorney was present but not defendant. A defendant's right to be present at all stages of a noncapital trial is a personal right that can be waived, and defendant's failure to object followed by his counsel's request to have the juror replaced amounted to a waiver.

### 2. Constitutional Law— double jeopardy—transferred intent—no objection at trial

Defendant waived his right to the double jeopardy defense by not bringing it to the attention of the trial court where he was contending that double jeopardy prohibited use of the transferred intent doctrine to punish him for assaulting unintended victims when he was already being punished for assaulting the intended victim. Moreover, it has been held that an instruction on transferred intent is proper when both intended and the unintended victims are injured or killed.

### 3. Conspiracy— sufficiency of evidence

There was sufficient evidence of conspiracy to commit murder where defendant and another man named "Chris" entered a car with guns and loaded them as they traveled; defendant remained in the car with Chris and others after Chris said, "we are going to get Kobie"; when they arrived at their destination, defendant was seen exiting the vehicle with a gun that he used to shoot a vehicle; and defendant did not run until a number of shots had been fired, two of which hit Kobie.

### 4. Appeal and Error— preservation of issues—no objection at trial—plain error not specifically alleged

A defendant in a prosecution for conspiracy to murder and assault waived his right to appellate review of a contention regarding an omission in the conspiracy instructions by not

objecting at trial and by failing to specifically and distinctly allege plain error in his brief.

### 5. Conspiracy— no merger with substantive offense

The trial court did not err by instructing the jury on both conspiracy to commit murder and acting in concert to assault with intent to kill where the assaults on individuals in a vehicle were substantive offenses resulting from furtherance of the conspiracy. The crime of conspiracy does not merge into the substantive offense which results from the conspiracy's furtherance.

### 6. Criminal Law— questions by judge—development of witness's memory—no intimation of opinion

A trial judge's questioning of a witness in a conspiracy to murder and assault prosecution was proper where the questions ensured the proper development of the witness's recollection of events and did not intimate to the jury that the judge believed defendant was guilty.

Appeal by Stephen Christian ("defendant") from six judgments entered 28 July 2000 by Judge James M. Webb in Montgomery County Superior Court. Heard in the Court of Appeals 7 January 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Daniel S. Johnson, for the State.*

*Cunningham, Dedmond, Petersen & Smith, L.L.P., by Bruce T. Cunningham, Jr., for defendant-appellant.*

CAMPBELL, Judge.

The relevant facts, based on the State's evidence, are as follows: On the afternoon of 14 June 1999, Kobie Wilson ("Kobie") was in Troy, North Carolina visiting the mother ("Mother Jones") of his fiancée, Jenny Jones ("Jenny"). Also in Troy that day were Jenny's minor son, Jaquarius French (also known as "Jay"), and Jenny's sister, Demetrius Ratliff ("Demetrius").

Throughout that afternoon, defendant's twin brothers ("the Christian twins") and Mitchell Hall ("Mitchell") repeatedly drove past Mother Jones' house in a green Honda Accord (the "Honda"). This action stemmed from a confrontation that had taken place earlier that day between Kobie and Mitchell, when Kobie had accused Mitchell and the Christian twins of sexually abusing his sister, resulting in a

fight between the two men. At approximately six o'clock that evening, Demetrius spotted the Christian twins outside Mother Jones' house calling for Kobie to come outside. Demetrius, believing that the Christian twins and Mitchell (who had remained inside the Honda) intended to cause trouble, threatened to call the police if they did not leave. The police were eventually called, but the men left before the police arrived.

Approximately two hours later, Lecia Christian ("Mother Christian"), the mother of defendant and the Christian twins, arrived at Mother Jones' house. Mother Christian was waving a handgun and taunting Kobie and the Jones family. Mother Christian drove away after Kobie threw a bottle at her vehicle.

Shortly thereafter, Mother Christian told the Christian twins about her encounter with Kobie. The Christian twins, who appeared angry and who were now accompanied in the Honda by David Horne ("David"), drove to Wadeville, North Carolina and picked up Christopher Christian ("Chris") and defendant. While these men proceeded to drive back to Troy, Chris stated, "we [are] going to get Kobie." Chris and defendant were each carrying a gun and loaded them during the drive.

The four Christian brothers and David arrived at Mother Jones' house several minutes later. They used the Honda to block in Jenny's vehicle just as it was backing out of the driveway. Jenny was the driver of the vehicle, with Kobie in the front passenger's seat, Jay in the rear seat behind Jenny, and Kobie's cousin, Devon Jones ("Devon"), in the rear seat behind Kobie.

Defendant and Chris were seen exiting the Honda carrying long-barreled weapons. Defendant fired the first shot into the hood of Jenny's vehicle, then both he and Chris proceeded to shoot into the Honda. Kobie was shot twice. Jay was shot in the face, which resulted in severe injuries including a split tongue, obliteration of his hard palate, and loss of bone from his jaw. Once the shooting stopped, defendant ran from the scene, while the other Christian boys and David left in the Honda. The Honda was subsequently stopped by the police.

Defendant was eventually apprehended and indicted for: (1) assaulting Jay with a deadly weapon with intent to kill inflicting serious injury (99 CRS 2489); (2) assaulting Kobie with a deadly weapon with intent to kill inflicting serious injury (99 CRS 2490); (3) conspir-

acy to murder Kobie (99 CRS 3360); (4) discharging a weapon into occupied property, namely, Jenny's vehicle (99 CRS 3361); (5) assaulting Jenny with a deadly weapon with intent to kill (99 CRS 3362); and (6) assaulting Devon with a deadly weapon with intent to kill (99 CRS 3363). Defendant was tried before Judge James M. Webb and a jury at the 24 July 2000 Criminal Session of Montgomery County Superior Court. He pled not guilty and presented no evidence in his defense. On 28 July 2000, the jury found defendant guilty as charged. Defendant received active prison sentences for the convictions. Defendant appeals.

Defendant brings forth six assignments of error. For the following reasons, we find that the trial court committed no error.

I.

[1] By defendant's first assignment of error he argues the trial court erred in removing a trial juror ("Juror Pollard") after a hearing in open court at which defendant's attorney was present, but not defendant. Defendant raises this assigned error based on the Confrontation Clause of the United States Constitution and our state constitution. *See* U.S. Const. amend. IV; *see also* N.C. Const. art. I, § 23. However, this constitutional issue was not raised by defendant during the trial court proceedings. Our state holds that "[t]his Court is not required to pass upon a constitutional issue unless it affirmatively appears that the issue was raised and determined in the trial court." *State v. Creason*, 313 N.C. 122, 127, 326 S.E.2d 24, 27 (1985) (citations omitted). Nevertheless, we shall address why we disagree with this assigned error.

Defendant's first assignment of error is based on the following trial events: In open court, but out of the presence of the jury, Juror Pollard asked to be dismissed from the jury because she had become afraid for her life. The trial court cleared the courtroom of all spectators to allow Juror Pollard to elaborate on the reason for her request. However, Juror Pollard stated that she would feel more comfortable speaking to the court if defendant was removed from the courtroom as well. Thus, the court had defendant removed from the hearing, but instructed defense counsel to remain. Neither defendant nor his counsel objected to his removal. Juror Pollard then proceeded to inform the court that she had been told by her niece that Mother Christian would give Juror Pollard $2,000.00 in exchange for finding defendant not guilty. Juror Pollard refused. She did not tell the other jurors about this conversation with her niece. Juror Pollard was then

sent out of the courtroom and defendant was allowed to return. Defense counsel moved to have Juror Pollard removed and replaced with an alternate. The court granted this motion.

"It is well-established that under both the federal and North Carolina constitutions a criminal defendant has the right to be confronted by the witnesses against him and to be present in person at every stage of the trial." *State v. Braswell*, 312 N.C. 553, 558, 324 S.E.2d 241, 246 (1985) (citation omitted). In noncapital cases, however, a "defendant's constitutional right to be present at all stages of the trial [is] a purely personal right that [can] be waived expressly or by his failure to assert it." *Id.* at 559, 324 S.E.2d at 246. Additionally, "[i]n a non-capital case counsel may waive defendant's right to be present through failure to assert it just as he may waive defendant's right to exclude inadmissible evidence by failing to object." *Id.*

Here, we note that defendant was tried in a noncapital case. When defendant was removed from the courtroom, neither defendant nor his counsel objected. Thereafter, the defense counsel moved to have Juror Pollard removed and replaced with an alternate. The inaction of defendant and his counsel, followed by defense counsel's request to have Juror Pollard removed and replaced, amounted to a waiver of defendant's right to be present during the court's questioning of Juror Pollard. Thus, "[w]hile it is the better practice for the trial judge to obtain an explicit waiver from a defendant before conducting a[n] . . . important proceeding in the defendant's absence, it [is] not error for him to fail to do so." *Id.*

## II.

**[2]** By defendant's second assignment of error he argues that the Double Jeopardy Clause of the United States Constitution prohibits the doctrine of transferred intent from being used to punish him for assaulting unintended victims (Jay and Devon) with intent to kill when he has already been punished for assaulting the intended victim (Kobie) with intent to kill. We disagree.

"The constitutional right not to be placed in jeopardy twice for the same offense, like other constitutional rights, may be waived by the defendant and such waiver is usually implied from his action or inaction when brought to trial in the subsequent proceeding." *State v. Hopkins*, 279 N.C. 473, 475-76, 183 S.E.2d 657, 659 (1971) (citations omitted). "To avoid waiving this right, a defendant must properly

raise the issue of double jeopardy before the trial court. Failure to raise this issue at the trial court level precludes reliance on the defense on appeal." *State v. White*, 134 N.C. App. 338, 342, 517 S.E.2d 664, 667 (1999) (citation omitted). In the instant case, defendant failed to bring his double jeopardy defense to the attention of the court. Thus, we need not address this assigned error on appeal because defendant's inaction at the trial level resulted in a waiver of his right to this defense. *See id.* However, had defendant properly and timely raised the double jeopardy issue, this assigned error would be without merit because our Supreme Court has held that an instruction on transferred intent is proper when both the intended victim and an unintended victim are injured and/or killed. *See State v. Locklear*, 331 N.C. 239, 415 S.E.2d 726 (1992) (holding that the trial court properly instructed on transferred intent when defendant killed the intended victim and, in the process, accidently wounded the victim's daughter).

### III.

[3] By defendant's third assignment of error he essentially argues that the trial court erred in denying his motion to dismiss the charge of conspiracy to commit murder on the grounds of insufficiency of the evidence. We disagree.

When ruling on a defendant's motion to dismiss, "the trial court is to determine whether there is substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense." *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651-52 (1982). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). Whether the evidence presented is substantial is a question of law for the court. *State v. Stephens*, 244 N.C. 380, 384, 93 S.E.2d 431, 434 (1956). Furthermore, the court "must consider such evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn therefrom." *State v. Patterson*, 335 N.C. 437, 450, 439 S.E.2d 578, 585 (1994).

Defendant contends that the state's evidence, particularly David Horne's testimony that "Chris said that we were going to get Kobie[,]" was not substantial enough to constitute a conspiracy between him and any of the men in the Honda. "A conspiracy may be proved by direct or circumstantial evidence and is established by showing the

existence of an express agreement or a mutual implied understanding between defendant and others to do an unlawful act or to do a lawful act by unlawful means." *State v. Lyons,* 102 N.C. App. 174, 183, 401 S.E.2d 776, 781 (1991). Proof of a conspiracy "may [also] be, and generally is, established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, they point unerringly to the existence of a conspiracy." *State v. Whiteside,* 204 N.C. 710, 712, 169 S.E. 711, 712 (1933).

At trial, the State provided sufficient evidence to prove the crime of conspiracy based on a "number of indefinite acts" and not solely on one statement made by David Horne. The evidence showed that: (1) defendant and Chris entered the Honda with guns and proceeded to load them as the vehicle traveled to Mother Jones' house; (2) defendant remained in the vehicle (with Chris, the Christian twins, and David) after Chris made the statement that "we [are] going to get Kobie[;]" (3) upon arriving at Mother Jones' house, defendant was seen exiting the vehicle with a gun, which he used to shoot Jenny's vehicle; and (4) defendant did not run away until after a number of shots were fired at the vehicle, two of which hit Kobie. We find all this evidence is sufficient for reasonable minds to conclude that there was an implied understanding between defendant and at least Chris, if not all of the other men in the Honda, to murder Kobie.

IV.

[4] By defendant's fourth assignment of error he argues the trial court erred when it gave vague and confusing jury instructions that were not in conformity with the conspiracy indictment. In particular, defendant contends that since the trial court's jury instruction on the conspiracy charge did not specifically name those individuals named in the indictment (which named the Christian twins, David, and Chris), the jury may have believed defendant conspired with someone not named in the indictment, such as Mother Christian. We find this assigned error to be without merit.

During the jury charge conference, the court suggested the pattern jury instructions on conspiracy to commit murder be used. Defendant made no objection and did not request a change to the instruction on this issue. Furthermore, defendant made no request for corrections or additions to the jury instruction after the instruction was given to the jury. "In most instances, N.C.R. App. P. 10(b)(2) precludes a party from assigning error to an unobjected-to omitted jury instruction. [Nevertheless], the 'plain error' rule allows for appellate

review of *some* assignments of error normally barred by operation of Rule 10(b)(2)" if defendant specifically and distinctly alleges that the trial court's action amounted to plain error. *State v. Najewicz*, 112 N.C. App. 280, 294, 436 S.E.2d 132, 140 (1993) (citation omitted). *See also* N.C.R. App. P. 10(b)(2), (c)(4) (2001). However, since defendant's brief failed to specifically and distinctly allege that the jury instruction amounted to plain error, he is not entitled to appellate review under this rule either. *See State v. Alston*, 131 N.C. App. 514, 518, 508 S.E.2d 315, 318 (1998). Thus, defendant has waived his right to have this assigned error reviewed on appeal.

## V.

**[5]** By defendant's fifth assignment of error he argues that the trial court erred in instructing the jury on both conspiracy to commit murder and acting in concert with another person to commit assault with intent to kill. However, "[i]t is well established that the crime of conspiracy does not merge into the substantive offense which results from the conspiracy's furtherance and that a defendant may be properly sentenced for both offenses." *State v. Baker*, 112 N.C. App. 410, 416, 435 S.E.2d 812, 816 (1993). In the case *sub judice*, the assaults on the individuals in Jenny's vehicle were the substantive offenses resulting from the furtherance of the conspiracy. Therefore, the trial court did not err in giving both of these instructions.

## VI.

**[6]** By defendant's final assignment of error he argues that the trial judge's questioning of Demetrius, the state's witness, was error because it violated defendant's right to an impartial judge under the Fifth and Fourteenth Amendments of the United States Constitution. *See* U.S. Const. amend. V, XIV. Although defendant again raises a constitutional issue that was not raised and determined in the trial court, we shall address why we disagree with this assigned error as well. *See State v. Creason*, 313 N.C. 122, 127, 326 S.E.2d 24, 27 (1985).

Defendant's argument is based on the following questions asked by the trial judge:

THE COURT: [Demetrius,] [d]escribe what you saw when the shooting started for the second time.

A. Gunfire, just shots being fired. I saw [Jay] from the chest up holding on to the seat, the driver's seat of the car. And I just [ran] to get him.

**STATE v. CHRISTIAN**

[150 N.C. App. 77 (2002)]

THE COURT:  Who did you see firing weapons?

A.  [Defendant] and [Chris] Christian.

THE COURT:  And in what direction?

A.  Directly into the vehicle.

THE COURT:  And from what distance was the defendant and [Chris] Christian from the vehicle at this time?

A.  Five to ten feet.

THE COURT:  And on which side of the vehicle?

A.  On the passenger's side of the vehicle.

THE COURT:  Both on the passenger?

A.  Yes, sir.

Our state holds that "[a] judge may not by his questions to a witness intimate an opinion as to whether any fact essential to the State's case has been proved." *State v. Lowe*, 60 N.C. App. 549, 552, 299 S.E.2d 466, 468 (1983). However, the questions asked by the trial judge in the instant case did not intimate to the jury that the judge believed defendant was guilty. Instead, they ensured the proper development of Demetrius' recollection of the events that occurred on the night in question. *See Vick v. Vick*, 80 N.C. App. 697, 700, 343 S.E.2d 245, 247 (1986) (holding that a court my interrogate a witness to either clarify the witness' testimony or to ensure proper development of the facts). The questions were therefore proper and do not amount to error by the trial court.

Accordingly, for the aforementioned reasons, defendant is not entitled to a new trial or to remand of this matter for resentencing because the trial court did not err.

No error.

Chief Judge EAGLES and Judge McCULLOUGH concur.