STATE OF NORTH CAROLINA v. JOSEPH DONNELL LITTLEJOHN

No. COA02-575

(Filed 1 July 2003)

**1. Jury— selection—peremptory challenges—*Batson* hearing—nondiscriminatory reasons**

Peremptory challenges were correctly allowed in an assault prosecution where the court permitted the prosecutor to explain the challenges without ruling on whether defendant had established a prima facie case; the prosecutor articulated credible, non-discriminatory reasons for the challenges which were both well-grounded in law and supported by fact; defendant did not offer any evidence of pretext other than the argument that the articulated reasons pertained equally well to other jurors who were not challenged; and the court considered this argument but concluded that none of the other jurors had the same combination of factors.

**2. Constitutional Law— double jeopardy—not raised at trial**

An assault defendant convicted of two assaults waived the question of whether double jeopardy was violated by not raising the issue at trial.

**3. Assault— one sequence of events—two counts**

The evidence was sufficient to establish two assaults, and the trial court properly denied defendant's motion to dismiss, where the assaults involved defendant and two different individuals, each with his own thought process and each using a different weapon, each assault was distinct in time and inflicted wounds in different locations, and the second assault occurred after the first had ceased and the victim had fallen to the floor.

Appeal by defendant from judgment entered 6 September 2001 by Judge Judson D. DeRamus, Jr., in Forsyth County Superior Court. Heard in the Court of Appeals 17 February 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Jane Ammons Gilchrist, for the State.*

*Glover & Peterson, P.A., by Ann B. Petersen, for defendant-appellant.*

STATE v. LITTLEJOHN

[158 N.C. App. 628 (2003)]

EAGLES, Chief Judge.

Joseph Donnell Littlejohn appeals from judgment entered in Forsyth County Superior Court upon a jury verdict convicting him of assault with a deadly weapon with intent to kill inflicting serious injury and assault with a deadly weapon inflicting serious injury.

The State's evidence tends to establish the following: Defendant and the victim, Bobby Lumley ("Lumley"), were friends who often socialized together. At approximately 3:00 p.m. on 27 January 2001, defendant called Lumley on the phone to see whether Lumley had any marijuana and if he wanted to smoke it. Lumley responded by telling defendant that he did have some marijuana and that he had just received his income tax refund. Lumley invited defendant to come to his house later so the two of them could smoke marijuana and "go have a good time." Defendant agreed.

At approximately 5:30 p.m., defendant arrived at Lumley's house accompanied by two men who Lumley did not know. Lumley, suspicious of the two other men, asked defendant who they were. Defendant told Lumley the two men were friends of his and assured Lumley that they were "cool." However, defendant never told Lumley the names of the two men. After repeated assurances from defendant that the unknown men were "cool," Lumley retrieved a small amount of marijuana from his bedroom and took it into the kitchen. Defendant and the two unknown men followed Lumley into the kitchen. Lumley placed the marijuana on the table and went to the refrigerator to get himself a drink. When Lumley turned back toward the table, he was confronted by defendant and the two unknown men. One of the unknown men ("Assailant B") brandished a small caliber handgun, pointed it at Lumley's head and demanded Lumley's money and "weed." The other unknown individual ("Assailant A") brandished a knife and stood with defendant, who was unarmed, behind Assailant B. When Lumley asked defendant what was "going on," defendant replied "I don't know," and proceeded, along with Assailant A, to pat Lumley down.

At this point, Lumley lunged at Assailant B, grabbed the gun, and began pushing him backwards into the doorway between the kitchen and the living room. Lumley forced defendant and Assailants A and B backward until all four men were jammed in the doorway. Lumley then knocked the gun out of Assailant B's hands onto the living room floor. Assailant B called out that he "dropped the gun" and an altercation followed as both Lumley and Assailant B tried to reach and

gain control of the gun. Ultimately, all four men ended up in the living room of Lumley's house. While Lumley struggled with Assailant B, defendant and Assailant A came up behind Lumley and began trying to "grab" and "hold" Lumley. At some point during this altercation, either defendant or Assailant A stabbed Lumley seven times in the back, buttocks and leg. Lumley stopped struggling and fell to the ground. Once Lumley was on the ground, Assailant B "picked up the gun" and shot Lumley twice in the leg. Defendant yelled "lets bail" and fled out the front door with Assailant A and Assailant B.

Following his arrest, defendant told police that he and the other two men, Assailants A and B, had gone to Lumley's house for the purpose of robbing him. Defendant gave police two names that he said were the names of Assailant A and Assailant B. Defendant also looked through books of police photos. However, at the time of trial, neither Assailant A nor Assailant B had been identified or arrested. Defendant was indicted and tried on: (1) one count of robbery with a dangerous weapon, under the theory of aiding and abetting; (2) one count of assault with a deadly weapon (.25 caliber pistol) with intent to kill inflicting serious injury, under the theory of acting in concert; and (3) one count of assault with a deadly weapon (knife) with intent to kill inflicting serious injury, under the theory of acting in concert.

During jury selection, the prosecutor peremptorily excused jurors number one and eleven. Defense counsel moved for relief under *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986), on grounds that defendant and both jurors were African-American. Without first ruling on whether defendant had established a *prima facie* case of discrimination, the trial court gave the prosecutor an opportunity to respond to defense counsel's allegations. After hearing argument from both counsel the Court found that "[a]ssuming that a *prima facie* case has been shown . . . the [S]tate has offered sufficient race-neutral reasons for exercising . . . the two peremptory challenges . . . The defendant has shown insufficient grounds for relief under *Batson*." (Emphasis added.) When the prosecutor peremptorily excused an African-American alternate juror, defendant again moved for *Batson* relief and renewed his earlier *Batson* motion. Without ruling on whether defendant had established a *prima facie* case, the trial court asked the prosecutor to respond. Following the prosecutor's explanation of her reasons for the peremptory challenge and a brief response from defense counsel, the trial court said,

again, assuming a *prima facie* case without finding a *prima facie* case, [the Court] finds the reasons given by the [S]tate for the

excuse of [the alternate juror] and other peremptorily challenged jurors to be race-neutral, and not violative of *Batson* restrictions, and the motion for striking the jury panel, or other relief from this jury panel is denied.

(Emphasis added.)

At the close of the State's evidence, defendant moved without argument, to dismiss all charges. The trial court denied defendant's motion to dismiss but reduced the second count of the indictment, the assault with the .25 caliber pistol, to assault with a deadly weapon inflicting serious injury on grounds that the State's evidence failed to establish that Assailant B acted with specific intent to kill. Defendant presented no evidence. Defendant was convicted of both assault with a deadly weapon with intent to kill inflicting serious injury and assault with a deadly weapon inflicting serious injury, but was found not guilty as to the first count of the indictment, robbery with a dangerous weapon. Defendant was sentenced to imprisonment for a term of 151 to 191 months for assault with a deadly weapon with intent to kill inflicting serious injury and a consecutive term of 53 to 73 months for assault with a deadly weapon inflicting serious injury. Defendant appeals.

[1] Defendant first contends the trial court erred by permitting the prosecutor to exercise peremptory challenges to exclude potential jurors on the basis of race. Specifically, defendant argues that the prosecutor's justifications were not sufficiently race-neutral and the trial court's inquiry into the legitimacy of those justifications was deficient. We disagree.

In *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986), and *Powers v. Ohio*, 499 U.S. 400, 113 L. Ed. 2d 411 (1991), the United States Supreme Court developed a three-part inquiry to be employed when a defendant alleges that a prosecutor has impermissibly excluded prospective jurors on the basis of race. *State v. Caporasso*, 128 N.C. App. 236, 243, 495 S.E.2d 157, 162, *appeal dismissed*, 347 N.C. 674, 500 S.E.2d 91 (1998). First, the criminal defendant must establish a *prima facie* case of discrimination. *Id.* "[A] defendant makes out a *prima facie* case of purposeful discrimination . . . if he shows: (1) he is a member of a cognizable racial minority, (2) members of his racial group have been peremptorily excused, and (3) racial discrimination appears to have been the motivation for the challenges." *State v. Porter*, 326 N.C. 489, 497, 391 S.E.2d 144, 150 (1990) (emphasis added). Next, "the burden of production 'shifts to

the State to come forward with a neutral explanation' for each peremptory strike[,]" to rebut defendant's *prima facie* showing. *Id.* (citation omitted). A prosecutor's explanations for exercising a peremptory challenge need not rise to the level of justifying a challenge for cause. *State v. White*, 349 N.C. 535, 551, 508 S.E.2d 253, 264 (1998), *cert. denied*, 527 U.S. 1026, 144 L. Ed. 2d 779 (1999). So long as the "motive is not racial discrimination, a prosecutor may exercise peremptory challenges based on 'legitimate hunches and past experience.' " *Id.* (citation and internal quotations omitted).

> [I]f the trial court requires the prosecutor to give his reasons without ruling on the question of a *prima facie* showing, the question of whether the defendant has made a *prima facie* showing becomes moot, and it becomes the responsibility of the trial court to make appropriate findings on whether the stated reasons are a credible, nondiscriminatory basis for the challenges or simply pretext.

*State v. Hoffman*, 348 N.C. 548, 551-52, 500 S.E.2d 718, 721 (1998) (citation omitted), *aff'd after remand*, 349 N.C. 167, 505 S.E.2d 80 (1998), *cert. denied*, 526 U.S. 1053, 143 L. Ed. 2d 522 (1999). Finally, "the defendant has a right of surrebuttal to show that the prosecutor's explanations are a pretext." *Porter*, 326 N.C. at 497, 391 S.E.2d at 150. Ultimately, the "burden of persuading the court that intentional racial discrimination has guided the use of peremptory challenges rests on the defendant." *Id.* at 497-98, 391 S.E.2d at 150. Because this necessarily entails an " '[e]valuation of the prosecutor's state of mind based on demeanor and credibility,' " *Caporasso*, 128 N.C. App. at 243, 495 S.E.2d at 162 (citation omitted), an "appellate court should not overturn the trial court's findings unless [it] is 'convinced that [the trial court's] determination was clearly erroneous.' " *Id.* (citation omitted).

Our courts have consistently held that the State may permissibly "exercise[] its peremptory challenges in pursuit of a jury that is 'stable, conservative, mature, government oriented, sympathetic to the plight of the victim, and sympathetic to law enforcement crime solving problems and pressures.' " *Porter*, 326 N.C. at 498, 391 S.E.2d at 151 (citation omitted). A prosecutor may also peremptorily excuse jurors when they "display[] a lack of attention," *Caporasso*, 128 N.C. App. at 244, 495 S.E.2d at 162 (citations omitted), or when the prosecutor has legitimate "concerns about a prospective juror's knowing the defendant or witnesses . . . ." *White*, 349 N.C. at 551, 508 S.E.2d at 264.

Here, without ruling on whether defendant had established a *prima facie* case, the trial court permitted the prosecutor to respond to defendant's allegations. The prosecutor gave the following reasons for each peremptory challenge: "With regard to juror number one . . . the juror was extremely young, or appeared to be extremely young. She's not married, nor does she have children, nor does she have a stake in a home of her own, she's currently renting." Furthermore, "[w]ith regard to [juror number eleven], as she came into the box, and throughout the court's introductory remarks to her, I noted her nodding and smiling at least in the direction of the defendant, and because of that, I was somewhat uncomfortable with her service." The prosecutor added that these actions "were so noticeable . . . that, without hearing the first word out of her mouth, I placed an X on her number on my sheet . . . ." Finally, after noting that the excused alternate juror was pregnant, the prosecutor explained:

> I had a difficult time getting the impression that she was able to stay awake. She seemed sluggish to me. When I walked in the courtroom after lunch, I noticed her sitting in the back sleeping. And then when she took her place in the alternate seat, it took her what I perceived to be an abnormally long time just getting up here; and then when she sat down, her eyes would droop, her voice would be slow and somewhat sluggish.

Because the trial court permitted the prosecutor to explain the challenges without ruling on whether defendant had established a *prima facie* case, the only issue before the trial court was whether the prosecutor's stated reasons were credible and non-discriminatory or a pretext. After careful review of the trial transcript, we conclude that the prosecutor articulated credible, non-discriminatory reasons for the challenges which were both well grounded in law and supported by fact. In response, defendant did not offer any evidence of pretext other than the argument that the articulated reasons pertained equally well to white jurors who were not challenged. The transcript reveals that the trial court considered this argument, but concluded that none of the other jurors had the same combination of factors and rejected defendant's argument of pretext. We hold that the trial court's determination in permitting the peremptory challenges was not clearly erroneous. Accordingly, this assignment of error is rejected.

[2] Defendant next contends that because the shooting and stabbing constituted one continuous assault, the trial court erred by denying

his motion to dismiss one of the assault charges. Relying on *State v. Brooks*, 138 N.C. App. 185, 530 S.E.2d 849 (2000), defendant argues that the evidence was insufficient to support convictions of both offenses because the State failed to present evidence of a distinct interruption between the assault with the knife and the assault with the gun. Defendant further argues that his conviction and punishment for two separate assaults violates his constitutional right against double jeopardy. We disagree.

We begin by noting that the constitutional right against double jeopardy may, like other constitutional rights, be waived by defendant's " 'action or inaction' " at trial. *State v. Christian*, 150 N.C. App. 77, 81, 562 S.E.2d 568, 572 (citation omitted), *disc. review denied*, 356 N.C. 168, 568 S.E.2d 618 (2002). " 'To avoid waiving this right, a defendant must properly raise the issue of double jeopardy before the trial court. Failure to raise this issue at the trial court level precludes reliance on the defense on appeal.' " *Id.* (citation omitted).

Here, defendant moved to dismiss all charges against him at the close of the State's evidence and at the close of all the evidence. However, defendant did not raise the issue of double jeopardy as the basis for these motions. Moreover, there is no evidence in the record that the issue of double jeopardy was ever raised in the trial court. Accordingly, defendant has waived review of this issue.

[3] Defendant nevertheless argues that insofar as the evidence presented at trial was insufficient as a matter of law to support his conviction of two separate assaults, this issue was properly preserved by assigning error to the trial court's denial of his motion to dismiss. After careful review of the record and transcript, we hold that even if this issue was properly preserved, there was no error.

Upon reviewing a motion to dismiss in a criminal trial, " 'the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.' " *State v. Scott*, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002) (citation omitted). "Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *Id.* at 597, 573 S.E.2d at 869. " 'In reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. Contradictions and dis-

crepancies do not warrant dismissal of the case but are for the jury to resolve.' " *Id.* at 596, 573 S.E.2d at 869 (citation omitted). " 'When ruling on a motion to dismiss, the trial court should be concerned only about whether the evidence is sufficient for jury consideration, not about the weight of the evidence.' " *Id.* at 596-97, 573 S.E.2d 869 (citation omitted).

Although the trial court reduced the second count of the indictment, it denied defendant's motion to dismiss and instructed the jury on assault with a deadly weapon with intent to kill inflicting serious injury and assault with a deadly weapon inflicting serious injury under the doctrine of acting in concert. The essential elements of assault with a deadly weapon with intent to kill inflicting serious injury are: "(1) an assault, (2) with a deadly weapon, (3) with the intent to kill, (4) inflicting serious injury, (5) not resulting in death." *State v. Reid*, 335 N.C. 647, 654, 440 S.E.2d 776, 780 (1994). The essential elements of assault with a deadly weapon inflicting serious injury are: " '(1) an assault (2) with a deadly weapon (3) inflicting serious injury (4) not resulting in death.' " *State v. Woods*, 126 N.C. App. 581, 592, 486 S.E.2d 255, 261 (1997) (citation omitted). Under the doctrine of acting in concert, "[i]f 'two [or more] persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose . . . or as a natural or probable consequence thereof.' " *State v. Mann*, 355 N.C. 294, 306, 560 S.E.2d 776, 784 (citations omitted), *cert. denied,* —— U.S. ——, 154 L. Ed. 2d 403 (2002).

Defendant does not contend that the evidence was insufficient to support a conviction of either assault with a deadly weapon with intent to kill inflicting serious injury or assault with a deadly weapon inflicting serious injury; only that the evidence was insufficient to support convictions of both offenses.

In order for a criminal defendant to be charged and convicted of two separate counts of assault *stemming from one transaction*, the evidence must establish "a distinct interruption in the original assault followed by a second assault[,]" so that the subsequent assault may be deemed separate and distinct from the first. *Brooks*, 138 N.C. App. at 189, 530 S.E.2d at 852. Therefore, the dispositive issue in this case is whether the State presented substantial evidence of an interruption between the assault with the knife by Assailant A and the assault with the gun by Assailant B, so that they may be deemed two separate

events. If so, defendant may be convicted of both offenses under the doctrine of acting in concert.

In *State v. Rambert*, 341 N.C. 173, 459 S.E.2d 510 (1995), defendant was riding in an automobile that pulled into a parking space next to the space where the victim was sitting in his automobile. Following a verbal altercation with the victim, defendant produced a gun. The victim ducked down in the seat as defendant fired once through the victim's windshield. When the victim pulled forward, defendant fired again, this time through the victim's passenger door. Defendant fired a third time into the rear bumper area of the victim's car as the victim continued pulling away from defendant. *Id.* at 176, 459 S.E.2d at 512. Defendant was convicted of three separate counts of discharging a firearm into occupied property. *Id.* at 175, 459 S.E.2d at 511. Defendant appealed on grounds that three separate convictions violated double jeopardy.

Our Supreme Court rejected defendant's claim, concluding that "defendant's actions were three distinct and, therefore, separate events." *Id.* at 176, 459 S.E.2d 513. The Court based this conclusion on the following factors: (1) "[e]ach shot . . . required that defendant employ his thought processes each time he fired the weapon"; (2) "[e]ach act was distinct in time"; and (3) "each bullet hit the vehicle in a different place." *Id.* at 176-77, 459 S.E.2d 513. *Accord State v. Nobles*, 350 N.C. 483, 515 S.E.2d 885 (1999).

Here, the assaults in which defendant was involved were carried out by two different individuals, each employing his own thought processes and each using a different weapon. The victim testified that he "knocked the gun out of [Assailant B's] hand" and began to struggle with Assailant B when the victim "went to pick the gun up . . . ." However, "[the victim] was stabbed first," at which time he "dropped" and "fell down." After the victim was on the floor, Assailant B "picked up the gun [and] shot [the victim] twice in the leg." Finally, while the victim was stabbed in the back, buttocks and leg, he was shot in the kneecap.

Viewed in the light most favorable to the State, this evidence tends to establish that each assault was distinct in time and inflicted wounds in different locations on the victim's body. Moreover, the assault by Assailant B occurred only after the original assault had ceased and the victim had fallen to the floor. It was at this point that Assailant B walked over to the gun, picked it up and began firing at the victim. Applying *Rambert*, we hold the State's evidence was suffi-

cient to show that there were indeed two separate assaults. Accordingly, the trial court properly denied defendant's motion to dismiss.

For all the foregoing reasons, we hold the defendant received a fair trial, free from prejudicial error.

No error.

Judges MARTIN and GEER concur.