STATE OF NORTH CAROLINA
v.
JAMES WALTER PARKER
No. COA09-631.
Court of Appeals of North Carolina.
Filed January 5, 2010.
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Jane Ammons Gilchrist, for the State.
Irving Joyner for Defendant-Appellant.
McGEE, Judge.
James Walter Parker (Defendant) appeals from judgments entered after a jury found him guilty of attempted first-degree murder and assault with a deadly weapon with intent to kill inflicting serious injury. Defendant contends that the trial court erred by giving jury instructions that defined a "deadly weapon" differently for each charge. We find no error.
The State's evidence at trial showed that Defendant married Bridget Kelly (Ms. Kelly) in 1997. Defendant was possessive of Ms. Kelly and frequently complained that she spent too much time with her mother. Defendant also believed Ms. Kelly was having an affair, although she repeatedly denied the allegation. Defendant's brother-in-law testified that Defendant threatened to kill Ms. Kelly on multiple occasions because he believed she was unfaithful. Defendant also told a friend that he would kill Ms. Kelly because she spent too much time with her mother.
Ms. Kelly packed Christmas presents to take to her parents' home on 29 December 2007. Defendant told Ms. Kelly that she was not allowed to leave. Ms. Kelly responded that she was going to see her family, and Defendant began to argue and curse at her. As Ms. Kelly began to place gifts in her car, Defendant came outside and continued to curse at her and tell her she could not leave.
As they argued by the car, Defendant punched Ms. Kelly on the left side of her face and she fell over on the car. Standing over Ms. Kelly, Defendant said, "You're not leaving this house. I'm going to kill you today." Defendant returned to the house and came back with his hand concealed behind his back. When Defendant moved his hand out from behind his back, Ms. Kelly could see that he had a large kitchen knife. Defendant continued to threaten to kill Ms. Kelly, and then began to chase her while brandishing the knife. Ms. Kelly raised her left hand when she turned to run, and Defendant cut her between her ring finger and middle finger.
Ms. Kelly ran to get help. When she turned to see how close Defendant was to her, he stabbed her on the side of her face, leaving a two-inch cut. Ms. Kelly fell down again, saw Defendant standing over her, and rolled onto her stomach to try to protect herself. Defendant stabbed Ms. Kelly in the middle of her back. Ms. Kelly tried to call 911, but Defendant grabbed the phone and called Ms. Kelly's father, and then called 911. When the police arrived, they found Defendant covered in blood and holding a towel to Ms. Kelly's head. Ms. Kelly was still bleeding from the wounds on her head and back. Defendant admitted that he stabbed Ms. Kelly in order to prevent her from going to her parents' house.
At trial, the Defendant noted for the record that the prosecutor had made numerous references in his closing argument to a definition of a deadly weapon that Defendant contended was inconsistent with the definition in the attempted first-degree murder pattern jury instruction. The trial court noted that the definitions of deadly weapon in the instructions for attempted first-degree murder and assault with a deadly weapon inflicting serious injury are different, and informed the parties of its intent to give the pattern jury instructions and inform the jury of the difference. Defendant reiterated his contention about the prosecutor's argument, and the trial court gave the jury charge without objection. After the jury charge, the trial court asked if the parties objected to the instructions as given, and Defendant did not object.
Defendant's sole contention on appeal is that the trial court erred by giving the jury the pattern jury instructions for attempted first-degree murder and assault with a deadly weapon with intent to kill inflicting serious injury, when those two instructions included different definitions of a deadly weapon. We conclude that Defendant waived his right to appellate review by failing to object to the jury instructions at trial or argue plain error on appeal.
N.C.R. App. P. 10(b)(2) requires that a party preserve instructional issues for appellate review by raising a timely objection at trial. A criminal defendant who fails to adequately preserve an instructional issue through objection may nonetheless argue the issue on appeal, provided that the defendant "specifically and distinctly" alleges plain error. N.C.R. App. P. 10(c)(4); see State v. Truesdale, 340 N.C. 229, 232, 456 S.E.2d 299, 301 (1995).
In this case, Defendant neither objected to the trial court's proposed jury instructions, nor argued plain error on appeal. Instead, before the trial court instructed the jury, Defendant expressed concern about the State's jury argument. Although given the opportunity by the trial court to object, Defendant also did not object after the trial court gave the jury instructions. Defendant has not assigned plain error to the jury instructions, nor has he argued in his brief that the instructions amounted to plain error. "Because defendant has failed to specifically and distinctly allege that the trial court's instruction amounted to plain error, defendant has waived any appellate review." State v. Hamilton, 338 N.C. 193, 208, 449 S.E.2d 402, 411 (1994); see also State v. Christian, 150 N.C. App. 77, 83-84, 562 S.E.2d 568, 573, disc. review denied, 356 N.C. 168, 568 S.E.2d 618 (2002). Accordingly, we find no error.
No error.
Judges GEER and HUNTER, JR. concur.
Reported per Rule 30(e).